## STEINMAN *v.* McWILLIAMS.

In actions of slander, under the plea of not guilty, or the pleas of not guilty, and justification, the defendant may give in evidence, in mitigation of damages, the general character of the plaintiff.

*Query,* whether such evidence can be given where the sole plea is justification.

In slander, the character which may be at issue is character in the most general sense, and not particular failings or vices, which may derogate from a general good character; and to permit, therefore, a defendant, in slander, for charging the plaintiff with perjury, to give in evidence, in mitigation of damages, *the general character of the plaintiff for truth and veracity,* is error.

The refusal of the court to permit the plaintiff, in an action of slander for perjury charged against him, to give evidence of his general character to protect and shield himself, and to confine him to his general character *for truth and veracity,* is error.

To sustain the plea of justification, in slander, for perjury charged, the same proof is required as would be necessary to convict on an indictment for perjury: two witnesses, therefore, must concur in proving every material fact sworn to by the plaintiffs to be false, or one witness and strong circumstances conducing to the same end.

In such case, if the court merely instruct the jury, that from the whole evidence of the plaintiff and defendant, they must determine whether the facts sworn to by the plaintiff, and charged against him as perjury by the defendant, were true or false, it is error. The court should have instructed the jury, that evidence of the same strength was necessary, as would convict the plaintiff in a criminal prosecution for perjury, and also what constituted such evidence.

On the trial of an action of slander for perjury, the materiality of the testimony, or the parts thereof alleged to be false, is a question of law, to be decided by the court; and if left to the jury it is error.

In error from the Common Pleas of Columbia county.

*July* 7. This was an action of slander brought by Leonard Steinman against John McWilliams. The declaration was not set forth on the paper book, but it appeared by the charge of the court, that it charged in a number of counts, that on the trial of a certain suit before William Kitchen, Esquire, a justice of the peace, wherein John Gilroy, James Philips and Company were plaintiffs, and John McWilliams was defendant, one Leonard Steinman was called, sworn and examined, as a witness on the part of the plaintiffs, and that John McWilliams, the defendant, said to him that the testimony which he gave was false and untrue; that he swore to a lie; and if all the men in Danville would swear as he did, he, McWilliams, would not believe them. Some of the counts alleged a repetition of the same declarations by McWilliams, after the trial before the justice, in conversations with persons in relation to the testimony given by Steinman.

The defendant pleaded the general issue; and, some time after he had so pleaded, he added, by leave of the court, the following

plea: *" that the words set forth in the several counts of plaintiff's declaration were true."* He subsequently, by leave of the court, withdrew the plea of not guilty, and went to trial on the plea of *justification.* When the cause came on for trial, and before the jury were sworn, the counsel for the plaintiff moved the court for judgment for want of a plea. The court said there was a plea on the record, to which the plaintiff must reply, or demur, and refused to allow the motion. This was plaintiff's *first* bill of exception. On the trial, the defendant proposed to ask a witness the following question: *" What is the general character of Leonard Steinman, in the neighbourhood where he resides, for truth and veracity ?"*

The plaintiff objected to the question; but the court overruled the objection, admitted the testimony, and sealed plaintiff's *second* bill of exception.

In the course of the trial the counsel for the plaintiff, as rebutting evidence, proposed to ask a witness the following question: *" What is the general character of the plaintiff, since the time of his election as constable, independently of any fact connected therewith ?"*

The defendant objected; and the court sustained the objection, but permitted the counsel for the plaintiff *to ask as to his general character for truth and veracity,* since the time stated in the offer, but not as to his general character. This was plaintiff's *third* bill.

The court below (ANTHONY, P. J.) charged the jury, in substance, as follows:

"It is usual, in cases of this kind, for the defendant to plead that he is *not guilty* of the slander imputed to him; and it then rests on the plaintiff to satisfy the jury that the defendant spoke in substance the words as charged in his declaration. But in the present case, the defendant, John McWilliams, admits that he spoke the words *alleged,* but declares, in substance, that he is ready and willing to prove the truth of the words which he spoke to, of, and concerning the plaintiff, Leonard Steinman.

"The first important question, then, for the jury will be, to carefully consider all the evidence in the cause, and, after fully deliberating on all the facts, to determine and decide whether the testimony given by Leonard Steinman was *true* or *false.* To constitute perjury, it is necessary that, before the justice, Leonard Steinman should have sworn wilfully, absolutely, and falsely, to a matter material to the issue or point in question.

"The defendant says that the testimony which the plaintiff gave on the trial before Justice Kitchen, was false—was untrue—was a lie. He has, by his plea, undertaken the burthen of proving to

the satisfaction of the jury that the plaintiff's testimony was *untrue* and *false.*

"You will, therefore, see the importance of carefully examining the evidence on this point, because the event of this trial mainly depends on your decision of this question.

"At this late hour it cannot be expected that the court will comment on the evidence. The counsel have fully argued the cause, and sifted the evidence; we shall therefore leave the facts to you as the proper tribunal to decide them. We will, however, remark, that you will inquire, it is presumed, what was the testimony given by Steinman before Justice Kitchen. After settling that in your minds, your next inquiry will be, does the testimony given in court satisfy you that what Steinman swore before the justice was *false*, or *does it not?* In deciding this point, you must weigh all the evidence given by both plaintiff and defendant. If you determine that what Mr. Steinman swore before the justice was *false* or *untrue*, then the plaintiff cannot recover, and your verdict should be for the defendant, because, if Steinman did swear wilfully, absolutely and falsely, on the trial before the justice, in a matter material to the issue, then the defendant has made good his assertion that Steinman did swear falsely, and ought not to pay damages for asserting the *truth.*

"But if, on the contrary, you are of opinion, and should so determine, that the testimony given by Steinman before Justice Kitchen was substantially *true*, then the defendant, McWilliams, has failed in his defence, and your verdict ought to be for the plaintiff.

"In case you decide that the plaintiff ought to recover, the next question for your consideration will be as to the damages which you ought to give the plaintiff.

"The amount of damages in actions of slander is peculiarly a matter for the jury. In arriving at a proper conclusion in such cases, the jury are to take into view the character of the plaintiff, the ability of the defendant, the manner and occasion in which the words were uttered, their repetition, the persisting in the declaration, or otherwise.

"A number of witnesses have been examined by both parties relative to the general character of the plaintiff for truth and veracity. The defendant does not ask that your verdict should be in his favour because the *character* of the plaintiff is impeached by him, but asks that this be considered *in mitigation of damages.* This is all right. The bad character of the plaintiff would not

authorize a verdict against him. The defendant must have satisfied you by the testimony given in relation to what Steinman swore before Justice Kitchen, that he swore falsely, before he can demand a verdict; and you can only take the character of Steinman into consideration in mitigation of damages. So many witnesses have been examined in relation to character, and as you are most probably acquainted with the witnesses, we submit this matter to the jury, and leave you to allow such damages, under all the circumstances of the case, as you think just and proper, if you are satisfied that the evidence given by L. Steinman before Justice Kitchen was true."

To this charge the plaintiff excepted. The jury found for the defendant; whereupon the plaintiff sued out this writ of error.

1. The court erred in permitting defendant to withdraw the plea of "not guilty."

2. In not giving judgment on motion for want of a plea.

3. In admitting evidence of general character for truth and veracity of plaintiff, as contained in bill of exceptions.

4. In admitting evidence as contained in third bill of exceptions at instance of plaintiff.

5. In not charging the jury to find in favour of the plaintiff upon the whole evidence as matter of law.

6. In charging the jury to determine and decide whether the testimony given by Leonard Steinman *was true or false.*

7. Also, that defendant "has by his plea undertaken the burden of proving to the satisfaction of the jury, that the plaintiff's testimony *was untrue and false.*"

8. Also, "does the testimony given in court satisfy you, that what Steinman swore before the justice *was false, or does it not ?*"

9. "If you determine, that what Mr. Steinman swore before the justice was *false and untrue, the plaintiff cannot recover, and your verdict should be for the defendant.*"

*Bancroft* and *Ellis,* for plaintiff in error.

*Comly* and *Montgomery,* contrà.

*July* 13. COULTER, J.—The paper book is not remarkable for its lucid order. Nor is the testimony set out, if it were so given, with the exactitude and precision necessary to indicate with desirable certainty, the materiality of evidence sworn to by the plaintiff, and its alleged variance from the truth; and which was charged by the defendant to have been wilfully corrupt and false. But this defect is compensated by the controlling character of some of the

points of law arising in the cause, which will be considered, and which relieve this court from any minute attention to the confused mass of testimony—such as it is—contained on the record. The *two first errors* assigned are of no moment; there is nothing in them which requires further notice. The *third* is, that the court erred in permitting the defendant to give evidence, in mitigation of damages, of the general character of the plaintiff for *truth and veracity*. This assignment will cover also the refusal of the court to permit the plaintiff to give evidence of his general character to protect and shield himself, and confining him to evidence of his general character for *truth and veracity*; to which the plaintiff excepted. The grievance set forth in the plaintiff's declaration is, that the defendant charged him with having committed perjury. The defendant withdrew his first plea of not guilty, and relied solely on the plea of justification, on which issue he went to trial. And the competency of evidence as to the plaintiff's general character for *truth and veracity* under that issue, is the question to be first resolved. The vibrating decisions of the English courts, seem at last to have settled on the position, that the defendant in actions of slander may give the general character of the plaintiff in evidence, in mitigation of damages, on the plea of not guilty, or when the plea is double, not guilty, and the plea of justification superadded. The New York courts, after a contest among the eminent judges who shed such brilliance on her judicial character, finally adopted the same conclusion : and such is the rule in our own courts. But I know of no decision, nor was any such cited in the argument, which adopts the rule in cases where the sole issue was justification. The defendant there seems to throw himself altogether upon the maintenance of the charge made by him, and to reject all aid from other sources. He admits that he made the charge; that he made it because it was true; and in short admits every thing that it was necessary the plaintiff should prove on the general issue, and puts him on his defence as to the particular charge. It is an issue not dependent upon character, except as to the commission of the offence imputed. If the defendant succeeds in establishing the plaintiff's guilt, he maintains his issue, and destroys his adversary; and no animal but the ass kicks the dead lion. Why, then, in such cases, give evidence of general character? And if the defendant fail in maintaining the truth of the charge, which he has deliberately and advisedly put on the record to cover the plaintiff with disgrace—after having fallen short in his attempt thus to reach the heart of his adversary—ought he to be permitted

to stab him in the leg or arm, and to throw himself back on the plea of not guilty, and resort to the plaintiff's general character to lessen the effects of his malice? Under such circumstances, the plea of justification is always considered a high aggravation. This plea would seem to throw the plaintiff off his guard in relation to evidence of general character, and attract his attention solely to a defence of the particular accusation. But whether evidence of general character may be given in such cases to mitigate the damages, is not the question here, and is therefore not decided. But can evidence of particular and separate departments of character be lawfully allowed? Evidence of this kind, when admitted, goes upon the ground, that the jury cannot rightly estimate the damages done to the character, unless they have some idea of its value. But how is character estimated? Certainly by its general import. It will not do to take up the decalogue and inquire whether a man is generally reputed as addicted to fornication, or adultery, to profane swearing, to Sabbath breaking. Nor would it be allowable to ask whether a man was generally reputed as a covetous person, who loved his neighbour's goods or his wife; and by the same rule, it is not competent to inquire, whether a man is generally reputed as a liar. If this mode of destroying character was allowed in our courts, the standing of all men would be in peril. We have but few Catos amongst us; and if we had more, such individuals would hardly seek redress in our courts. But the law is not made for the protection of such men; but for the protection of that middle class all the world over, who have a sense of truth, honour and virtue, and who are yet not above the infirmities of life; whose sensibility as to the value of character, and whose liability to err, make them more susceptible of wounds from the shaft of slander. The thousand wagging tongues of this world—sometimes in sport and sometimes in malice—make free with some department or quality of character of good men in the main. And if malice were allowed to seize hold of these reports, and embody them in a court of justice, to destroy character, few men would be safe. The truth is, that it is only in general character that a man finds his true level in society; and that alone ought to mark his value. It is a man's character in gross, and all taken together, his faults and his virtues—if he have any, and few but who have some—that forms his individuality as to character; and which ought to determine for how much it is worth. Even a man's relatives have some interest in his character; his wife, and his children are entitled to claim, that whatever of soundness it retains, shall be preserved to them. And I may add,

that the hopes which we are taught to cherish for the future, lean upon our general character, taking us all in all, for support. The adjudicated cases support this view of the law. In the case of Root *v.* King, 7 Cow. Rep. 613, it was determined, that so far as character was in issue in an action of slander, it was character in the most general sense, and not failings or vices, which might derogate from a general good character. Chief Justice Savage says, the proper question is, " What is the plaintiff's general character?" In that cause there was a plea of not guilty, as well as the plea of justification. The defendant may give in evidence the plaintiff's general bad character in mitigation of damages : Phillips' Evidence, old ed. 147. But he maintains, on the authority of Snowden *v.* Smith, that such evidence is not admissible, when the defendant republishes the slander by his plea, and puts the truth of the words in issue : same book and page. The same principle, to wit, that only the general character can be given in evidence, is maintained in 2 Cow. 813, and in Matson *v.* Buck, 5 Cow. 499 ; Bodwell *v.* Swan, 3 Pick. 376 ; and in Long *v.* Brougher, 5 Watts and Serg. 439. In the last case, the defendant was not permitted to give in evidence, that the plaintiff admitted to witnesses that he had been guilty of a similar offence to that imputed to him ; nor to give evidence that it was generally reported in the country for many years, that the defendant had been guilty of the same kind of offence as that charged against him. The Chief Justice, in delivering the opinion of the court, observed, that the rule was inveterate, that character can be impeached only by general evidence of its condition : all that opinion powerfully concentrated to the point, will illustrate this subject. Character cannot lawfully be attacked and frittered away in detail. There was error, therefore, in allowing the whole examination to proceed on the ground of general character as to truth and veracity. And there was especial error, in refusing to let the plaintiff give evidence of his general character to protect himself. There never was a case, where the facts in evidence, as they are on the paper book, could more clearly illustrate the wisdom of the rule, that evidence as to general character alone is proper in such cases. But as this cause may be tried again, I make no observations on the particular facts.

The fourth error assigned is not sustained by the court, and requires no further observation. The remaining six specifications of error relate to the charge of the court, and will be considered together. To sustain the plea of justification in an action for accusing the plaintiff of perjury, the same proof is required as that

which would be necessary to convict on an indictment for the crime : Woodbuck v. Keller, 6 Cow. 118 ; Robert v. Champlain, 14 Wend. 120. Two witnesses, therefore, must concur in proving every material fact sworn to, false ; or one witness, and strong circumstances conducing to that end. But the court below do not give that essential instruction to the jury. They merely instruct the jury, that from the whole evidence of plaintiff and defendant, they must determine whether the facts sworn to were true or false. Whereas they ought to have instructed them, that evidence of the same strength was necessary, as would convict the plaintiff in a criminal prosecution ; and also to have instructed them what constituted such evidence. This is not specifically assigned for error ; but may, I think, be covered by the whole of the specifications taken together. Five of the assigned errors point out as many places in the charge of the court, in which they tell the jury, that the question for them to determine was, whether the testimony given by L. Steinman was true or false. This is, undoubtedly, error, strong error, unless it is healed by some other part of the charge. It is so naked, so meagre, as to be totally inadequate to the exigencies of the case. It not only left the jury without proper information, but was calculated to lead them astray. The only other parts of the charge, in which this error can be considered as compensated, are in the two following sentences : *First,* "If you determine that what Mr. Steinman swore before the justice was false or untrue, then the plaintiff cannot recover, and your verdict should be for the defendant ; because if Steinman did swear wilfully, absolutely, and falsely on the trial before the justice, in a matter material to the issue, then the defendant has made good his assertion." *Second,* "To constitute perjury, it is necessary that Steinman should have sworn wilfully, absolutely, and falsely, to a matter or point material to the issue." I will throw out of view the other parts of the charge indicating the point of inquiry to be, whether the matter sworn to by Steinman was true or false, and consider whether the instruction in the foregoing sentences was sufficient. In the first place, then, the materiality of the testimony, or the parts of it alleged to be false, in a trial of this kind, is a matter of law, which ought to be decided by the court, and not left to the jury ; 12 Wend. 500 ; Rouse v. Ross, 1 Wend. 475 ; Power v. Pierce, 16 Wend. 450. And the rule of law applies emphatically to evidence given before a justice of the peace, where what is material and what is irrelevant is often mingled in admirable confusion. The trial below, as was stated at

bar, lasted three or four days, and was concluded at midnight. There is certainly a great mass of testimony jumbled on the paper book. The court tell the jury that the testimony had been fully commented on by the counsel, and leave the question of materiality to be decided by them; which is a question of law and not of fact, and sometimes presents a difficult question of law. The animated and zealous contest of able and ingenious counsel made it only the more necessary that the court should have instructed the jury on this point, and not left them to wander darkling, without notes, through the mass, to ascertain its materiality. In the next place, the definition of what constitutes perjury is inadequate; because, although the court adopt the words of Sir Edward Coke, yet something beyond that was necessary, to give the jury a proper understanding of the crime. The word, *wilfully*, does not mean, in the common acceptation of the term, corruptly; nor is it predicated of the term *falsely*, so as necessarily to mean, wilfully false, but is predicated of the oath, meaning that he, Steinman, swore wilfully and falsely: which does not sufficiently exclude all swearing by surprise or mistake, and does not thoroughly imply, that the person taking the oath knew at the time that he was swearing falsely. Sir William Blackstone, therefore, adds, that the oath must be corrupt and taken *malo animo*. And in courts, it has been decided, 6 Binney, 249, that it is perjury, if a man swear wilfully, absolutely, and falsely to a matter, which he has no probable cause for believing. Thus clearly adopting the view of Sir William Blackstone, that there must be the *malo animo*, the *scienter* of falsehood, or a reckless rashness, which is its equivalent. It was proper for the court to have added these explanations to the naked definition given; and for want of them, the jury may have fallen into error, in supposing that swearing wilfully and falsely, by mistake or surprise, was perjury. I will only add, that a person, who wilfully and deliberately pleads a justification in a cause of this kind, ought to be held to the same strictness of proof necessary to convict in a criminal prosecution for the same offence: for the law has so ordained. And if so, the law ought to be declared on the subject by the court, with the same strength and power of protection and punishment, in the one case as in the other. For, although the maintenance of the plea does not send the plaintiff to the penitentiary, it fixes the mark of the *crimen falsi* on his forehead, and permits him to go at large, despised, hated, and avoided by men.

The judgment is reversed; and a *venire de novo* awarded.