Commonwealth *v.* Miller, Appellant.

Argued October 8, 1928.

Before PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*Charles C. Crowell,* and with him *Philip K. Shaner*

and *John H. Jackson,* for appellant.—Defendant was not a public officer who could be found guilty of malfeasance in office: Chapter 34 of Cyclopedia Criminal Law, Vol. 2, Brill, pages 1813, 1814 and 1815; Edge v. Commonwealth, 7 Pa. 275; Commonwealth v. Wilson, 30 Pa. Superior Ct. 26; Commonwealth v. Cauffiel, 79 Pa. Superior Ct. 604.

*Thomas W. Watson,* and with him *Charles E. Miller,* District Attorney, for appellee.—Defendant was such an officer de jure or de facto as could be charged with the common law offense of malfeasance in office: Commonwealth v. Evans, 74 Pa. 124; Houseman v. Commonwealth, 100 Pa. 222; Richey v. Philadelphia, 225 Pa. 512.

OPINION BY GAWTHROP, J., December 13, 1928:

Defendant was tried and convicted on a bill of indictment charging that he, being a captain of Troop B, State Highway Patrol, appointed by the State Highway Commissioner of the Commonwealth to carry out and enforce the provisions of the Act of Assembly approved May 24, 1923, P. L. 425, and its amendments, and having under his command as captain certain subordinate appointed officers, did unlawfully, dishonestly and corruptly, in violation of his duties under said appointment, and with intent to defeat justice by stifling a prosecution, order, direct and procure the release of one Vidal who had been arrested and was under bond for a hearing before an alderman of the City of Butler, Pennsylvania, for the offense of driving a motor vehicle on the public highways of the Commonwealth of Pennsylvania while under the influence of intoxicating liquor, when he well knew that the said Vidal was guilty of the offense charged. From the sentence to pay the costs of prosecution, a fine of $200 and undergo imprisonment for the term of four months, he appealed to this court.

The testimony offered at the trial warrants the following statement of facts: Defendant is a member and captain of Troop B in an organization of employees in the Department of Highways of the Commonwealth known as the State Highway Patrol, which was organized pursuant to the Act of May 24, 1923, P. L. 425, and the Act of June 14, 1923, P. L. 718, for the purpose of patrolling the highways of the state and causing the arrest and prosecution of violators of the motor vehicle laws. He was stationed at Greensburg, Pennsylvania. His troop was divided into companies, one of which was stationed at Butler, Pennsylvania. R. S. Anderson was a corporal in this company and George E. Manning was a private patrolman therein. On Sunday, August 28, 1927, while private Manning was patrolling a public highway in Butler County, he arrested one Vidal on the charge of operating a motor vehicle on a public highway of the Commonwealth while under the influence of intoxicating liquor, and took him to a physician for examination. Vidal was "very badly intoxicated." The physician gave Manning a certificate stating that fact. Manning then lodged Vidal in the county jail. The next morning he took him to the office of Alderman Phillips, a committing magistrate in and for the County of Butler, and made an information charging him with the offense of operating a motor vehicle on a public highway of the Commonwealth within the County of Butler while under the influence of intoxicating liquor. A warrant was then issued and duly served on Vidal, who waived a hearing and was committed to the county jail in default of bail. On August 29, 1927, an attorney from Pittsburgh, representing Vidal, called on the alderman and obtained the latter's permission to have a hearing for his client and enter bail for a hearing to be held on the evening of August 31st. The attorney then inquired of Corporal Anderson, who was in

charge of the detail of State Highway Patrolmen at Butler, for the name of his superior officer and learned that defendant, stationed at Greensburg, was such officer. On Tuesday, August 30th, an assistant district attorney of Allegheny County called defendant on the telephone at Greensburg and stated that he did not think that Vidal had been under the influence of liquor and requested that defendant investigate the matter. Whereupon, defendant called Corporal Anderson on the telephone at Butler and asked if there had been a man by the name of Vidal arrested. Anderson told him that Patrolman Manning "picked up a drunk by that name" Sunday night and had made information against him before Alderman Phillips. Defendant asked about the case and Anderson told him that he did not know much about it. Defendant asked if they had a doctor's certificate and Anderson said that Manning told him that he had one. Whereupon, defendant told Anderson to see if he could have the information withdrawn and the case kept out of court, and that if the alderman would allow it to be withdrawn Anderson should order Manning to withdraw it and make an information against Vidal for reckless driving. At that time defendant stated to Anderson that some persons in Pittsburgh wanted the case kept out of court, and that the patrol was not "standing very good" in Allegheny County and that if this information was withdrawn it would help their standing with the officers in Allegheny County. Whereupon, Manning went to the alderman and withdrew the information over the protest of the county detective who was present and stated that he had evidence sufficient to convict Vidal of the offense charged. The alderman allowed the withdrawal because Manning said he had orders from Captain Miller to withdraw it.

The first question presented for our consideration is: Was the defendant at the time of the commission

of the alleged offense a public officer liable to prosecution and conviction for the crime of malfeasance in office? The answer involves the distinction between an office and an employment, the difference between an officer and an employee. The Act of May 24, 1923, P. L. 425, was an act providing a system of registering titles to motor vehicles, etc., and imposing duties on the State Highway Commissioner. Its thirteenth section specifically appropriated the moneys derived under the provisions of the act to the State Highway Department to effectually carry on the work thereof as described in the Act of May 31, 1911, known as the State Highway Act, with amendments thereto, and to carry out and enforce the provisions of the Act of 1923 and its amendments, including the penal provisions thereof. Then follows this provision: "And for that purpose the commissioner is hereby authorized to appoint such employees as, in his discretion, are necessary." The Act of June 14, 1923, P. L. 718, by section 10, amends section 12 of the Act of 1919, P. L. 678, regulating the use and operation of motor vehicles, as amended. It authorizes the State Highway Commissioner to appoint such employees as, in his discretion, are necessary to carry out and enforce the act to which it is an amendment, and all amendments and supplements thereto, including the penal provisions thereof. Under the authority conferred on him by these acts, the Commissioner of Highways appointed defendant and certain other employees. He organized them into a body which he called the State Highway Patrol. It was formed upon a semi-military plan, with a superintendent at its head. It was divided into troops, each of which was in command of a captain, who had under him and subject to his orders lieutenants, sergeants, corporals and private patrolmen. The troops were subdivided and details were stationed at various points within the district under

the jurisdiction of the main troop. Each of these details was headed by a corporal. The members were uniformed and in effect constituted a kind of police force in the State Highway Department. It was their duty to file criminal informations against persons whom they found violating the penal provisions of the motor vehicle laws. They did not have the authority of peace officers or the power to arrest. The Act of May 11, 1927, P. L. 866, which conferred that power, did not become effective until January 1, 1928.

In determining whether or not one is to be regarded as a public officer, there are certain criterions which have been established, both upon reason and authority, and applied as tests in the decided cases. The characteristics of a public office are tenure, duration, fees, or emoluments and power, as well as duty. All these taken together constitute an office, but it is not necessary that an office should have all of these characteristics, although it must possess more than one of them, and the mere fact that it concerns the public will not constitute it an office: 22 R. C. L. 372. The powers and duties attached to a position manifest its character. Mr. Justice Brown, afterwards Chief Justice, said in Richie v. Phila., 225 Pa. 511, 515: "In every case in which the question arises whether the holder of an office is to be regarded as a public officer within the meaning of the constitution, that question must be determined by a consideration of the nature of the service to be performed by the incumbent and the duties imposed upon him, and whenever it appears that those duties are of a grave and important character, involving in the proper performance of them some of the functions of the government, the officer charged with them is clearly regarded as a public one." In discussing this question the Supreme Judicial Court of Massachusetts said in Attorney General v. Tillinghast, 203 Mass. 539, 89 N. E. 1058: "The

holder of an office must have entrusted to him some portion of the sovereign authority of the state. His duties must not be merely clerical or those only of an agent or servant, but must be performed in the execution or administration of the law, in the exercise of the power and authority bestowed by law." There are many persons engaged in the public service as subordinate ministerial agents or employees, exercising functions of such an inferior character that they could not properly be considered to be officers. While our Supreme Court expressed the opinion in Com. v. Black, 201 Pa. 433, 436, that a policeman of a city is a subordinate ministerial agent or employee, like a fireman, a watchman or superintendent of public squares or other property, under the orders of a municipal department and at most a petty officer not intended to be included in the constitutional provision that "appointed officers other than judges of the courts of record, and the superintendent of public instruction may be removed at the pleasure of the power by which they have been appointed," and subject to appointment and removal according to legislative regulation, we do not understand that case to decide that a policeman is in no sense a public officer. The duties of defendant were of a grave and important character. They involved directly the enforcement of the penal provisions of the statutes regulating the registration and operation of motor vehicles in the Commonwealth, which is one of the functions of the executive branch of the state government. In our opinion the fact that defendant did not have full police power, and authority to arrest on view, without process, any person violating any of the penal provisions of the acts he was concerned in enforcing, is not controlling in the decision of the question whether he was a public officer. While that fact affects the extent of his authority it does not determine

his status. The offense of malfeasance in office is similar to common law extortion in some respects. Both offenses involve an abuse of public justice and both can be committed only by a public officer. Extortion at common law is the unlawful taking by any officer, by color of his office, of any money or thing of value that is not due him, or more than is due, or before it is due. In general, it may be said that any officer whether he be a federal, state, municipal, or a judicial officer, and every other person occupying an official or quasi official position, may be guilty of this offense: Com. v. Saulsbury, 152 Pa. 554. Convictions of a policeman of extortion at common law were sustained in Com. v. Ruff, 92 Pa. Superior Ct. 530, in Com. v. Norris, 87 Pa. Superior Ct. 61, and in Com. v. Wilson, 30 Pa. Superior Ct. 26. There would seem to be no valid reason why one exercising the functions performed by defendant should not be held to be such a public officer as can be held guilty of malfeasance in office at common law. In our opinion he was such a public officer. Assuming, however, that the position occupied by defendant did not rise to the dignity of a public office, we have no difficulty in concluding that he is still indictable at common law. "All such crimes as especially affect public society are indictable at common law. The test is not whether precedents can be found in books, but whether they injuriously affect the public police and economy": Com. v. McHale, 97 Pa. 407, 410. The common law is sufficiently broad to punish as a misdemeanor, although there may be no exact precedent, any act which directly injures or tends to injure the public to such an extent as to require the state to interfere and punish the wrongdoer, as in the case of acts which injuriously affect public morality, or obstruct, or pervert public justice, or the administration of government: 16 Corpus Juris, Sec. 23, page 65, citing Republica v. Teischer, 1 Dallas 335;

Com. v. Sharpless, 2 S. & R. 91, and Barker v. Com., 19 Pa. 412. Argument is not required to show that the act charged against defendant is of that character. The information which he directed Manning to withdraw charged a grave offense punishable by a fine and imprisonment, and conviction thereof required the State Highway Commissioner to suspend or revoke the operator's license issued to the convicted person and to refuse to issue another license to him for a period of one year following the revocation. The information which defendant directed to be made in place of the one he withdrew charged but a trivial offense. This amounted to no less than favoritism in the enforcement of the criminal law by one whose duty it was to enforce it impartially. Such an act strikes at the very foundations of our institutions.

The only other question presented by the statement of the questions involved is whether the evidence was sufficient to warrant the conviction. We have no hesitation in concluding that it was sufficient. There was a sharp conflict in the testimony and the jury believed the evidence presented by the Commonwealth which justifies the verdict. Therefore, we may not interfere. In view of the importance of the case and the sentence imposed, we have examined all of the assignments of error, some of which were not covered by the statement of questions involved or pressed at the oral argument or in appellant's brief, and find that none of them can be sustained. All are overruled.

The judgment is affirmed and the record remitted to the court below, and it is ordered that the defendant appear in that court at such time as he may be there called, and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time the appeal in this case was made a supersedeas.