Commonwealth of Pennsylvania *v.* Rosser et al., Appellants.

Argued October 27, 1930.

Before TREXLER, P. J., KELLER, LINN, GAWTHROP, CUN-NINGHAM, BALDRIGE and WHITMORE, JJ.

*Abram Salsburg,* and with him *John H. Dando, Richard B. Sheridan, John H. Bigelow* and *Thomas F. Farrell,* for appellants.

*Thomas M. Lewis,* District Attorney, and with him *Herman J. Goldberg, M. S. DePierro,* Assistant District Attorneys, *Edmund E. Jones, Joseph A. Mulhern* and *Frank A. McGuigan,* for appellee.

OPINION BY BALDRIGE, J., December 27, 1930:

The commissioners of Luzerne County were charged in an indictment containing thirty-six counts with wilful misbehaviour in office. The jury convicted them on the second, third and fourth counts and acquitted them on all the other counts. The alleged criminal conduct consisted in violating the Controller Act of June 27, 1895, P. L. 403, as amended by the Act of 1927, P. L. 176, which provides that all contracts made by commissioners involving an expenditure exceeding three hundred dollars shall be in writing and that no such contract shall be entered into unless made with the lowest and best bidder after due publication. We are not concerned directly with the first count in view of the jury's finding but it has a bearing on the counts we are considering as the alleged wrong has a connection with the principal contract, which was the basis of that count.

The counts in the indictment as originally drawn charged that the defendants did "wilfully, wrongfully,

maliciously and unlawfully misbehave themselves in office in that they did a certain dishonest, malicious and unlawful act, to wit." The trial judge eliminated the words "wrongfully," "maliciously," "dishonest" and "malicious," as surplusage, and held, which we think was proper, that maliciousness was not an essential ingredient, leaving the offense charged, the wilful doing of an unlawful act.

On the 15th of March, 1928, the Department of Highways of the Commonwealth and the County of Luzerne entered into a contract providing for the construction of a 40-foot concrete roadway on Route No. 11 from Luzerne Borough line to a point in the village of Trucksville, a distance of 2.3 miles. Eighteen feet, the width of the old road, was to be paved at the expense of the Department of Highways and the remaining 22 feet by the county. In pursuance of this agreement, the State Highway Department advertised for bids; on May 14, 1928, the H. C. Kersteen Company, the successful bidder, entered into a contract with the County of Luzerne for the construction of its portion of the highway. The contract did not include the relocation of the Wilkes-Barre Railway Corporation's tracks, the removal of buildings within the right-of-way, the construction of bridges, the changing of the channel of a stream, the providing for the maintenance of trolley and vehicular traffic, etc., which, under the agreement with the Department of Highways, was to be performed and paid for by the county commissioners.

On May 24, 1928, the county engineer of the road and bridge department of the county wrote the commissioners that D. W. Davis and Sons, Inc., had submitted a figure for excavating and grading necessary to the shifting of the railway company's tracks on a basis of cost, plus fifteen per cent, on all labor and superintendent charges, with a certain rental for shovels, air

compressors and trucks, and on that date the county commissioners passed a resolution "That the foregoing rates for rental of equipment, etc., be established in the matter of excavation and grading in connection with the county's part of the work on Route No. 11." Subsequently, Davis and Sons, Inc., was directed to proceed with the excavation, grading, and other work which the county agreed to do and which eventually involved the expenditure of $192,000. It was the awarding of the work and the payment therefor that was complained of on the first count.

The learned court below held as a matter of law that it was a mandatory duty of the county commissioners to put in writing all contracts involving the expenditure of more than three hundred dollars and to advertise for bids and to award the contract to the lowest and best bidder, and as the defendants admitted that they failed to do so, the law was not complied with. The jury was instructed that it was their duty to determine whether or not the county commissioners *wilfully* violated the law. The court said to the jury on this phase of the case: "Public officers with mandatory duties to perform under the law are presumed to know the law, and if they wilfully do an act which is in violation of that mandatory duty, it becomes an indictable offense. The acts here forbidden, that is, the letting of contracts in any other manner than that provided by law, are not necessarily criminal, but become so if done wilfully or with evil intent."

The appellants in their first three assignments of error complain of the court's refusal to quash the indictment and direct a verdict of not guilty. These assignments were not vigorously pressed and they are not entitled to any discussion as it is very clear that the indictments were in proper form and the facts averred were for the jury's consideration.

The fourth to the seventh assignments, inclusive, relate to the application of the Act of 1895, supra, to the facts in this case. The appellants contend that it was unnecessary to advertise for bids and enter into a written contract as the work that was done was in the nature of maintenance and repair of the roads in question. We accede to the proposition that the commissioners would not have had to ask for bids or enter into a written contract to make ordinary repairs or for usual maintenance to a road under their authority but the so-named "Township Road" was in fact a township road located at some distance from the main highway and there was no duty on the commissioners to repair and maintain it and the primary object was to get material for fills and Rosser said "at the same time they were able to aid the township.".

The "Trucksville Graveyard Road" and the "Upper Road Approach" were lateral highways. They connected with the main highway and as a result of the lowering of its grade, they remained above the main thoroughfare at the points of juncture, and in order to give access thereto, it required a certain amount of excavation, etc. Just how extensive, or the distance back from the improved highway, was the grading and excavating is not stated in the record, except that the "Trucksville Graveyard Road" had to be lowered 8 or 9 feet to bring it to the level of the new highway. We do know that the commissioners paid $28,400 for the work, which leads one to the conclusion that more than usual repairs or maintenance was involved. In construing this Act of 1895, supra, the Supreme Court has said in Com. ex rel. v. Jones, 283 Pa. 582, "A law requiring municipal work to be advertised and given to the lowest, responsible bidder is mandatory ...... When the work is so extensive as to constitute a new undertaking, the Act of Assembly controls."

Nor do we regard that the work was merely inci-

dental to the building of the main highway, as argued, nor could the work be regarded as slight changes or small improvements made in connection with that job. Mr. Colligan, one of the engineers called by the Commonwealth, testified that the work on these roads was not connected with the relocation of the tracks. Harrison, one of the defendants, stated also that that work was not related to the work done on the traction company's right-of-way.

There seems to be no convincing reason why a contract should not have been entered into as required by the statute as the defendants admit this was not a case of a sudden emergency where prompt action was necessary to put the roads in condition to accommodate the travelling public. They knew on March 15, 1928, according to their testimony, that this work would be necessary so they had ample opportunity to perform the formalities that the law requires, as the undertaking was not commenced until about November 16, 1928, and was completed April 1, 1929.

It is further contended by the appellants that they themselves did the work, that no contract was actually entered into with Davis and Sons, Inc., and, therefore, advertising for bids, etc., was not required. Under the testimony of Rosser, the work of Davis and Sons, Inc., was extended from time to time as the job progressed, which eventually included the excavation, etc., in connection with the three roads in question under the same arrangement and subject to the same conditions as the main job. The commissioners did not hire or pay any of the men who worked on the job; they kept no payrolls showing the names, the dates or the hours they worked, or the amount each man was entitled to be paid. Adopting the language of the learned court below, "all that remained for the parties to do under the agreement was that the commissioners should direct the work to be done, and the contractor

should furnish the equipment and the labor, the agreement then fixed the amount to be paid. It was a cost plus contract, plain and simple, and a most remarkable one at that. The commissioners agreed to pay for the labor and superintendents plus fifteen per cent thereon, but not a word appeared in the resolution as to the wages to be paid for labor or superintendents. If it is seriously contended that this agreement with Davis & Co. was the equivalent of doing the work themselves, it was then incumbent upon the commissioners to fix the rate of wages and pay the employes directly, and not permit another to fix the rate and pay the employes and bill the county therefor without even so much as a payroll to sustain the charges. It not only was a contract but a contract that opened wide the door for fraud." County commissioners, undoubtedly, have the right to employ architects or engineers to act in their behalf and superintend and direct their own employes, but the work was not done by their own workmen. The men, as we have observed, were not on their payrolls and no provisions were made as was done in the sixteenth paragraph of the contract with the Wilkes-Barre Railway Corporation which stipulated that the corporation would supply trained and skilled men to erect the pole lines, trolley wires, etc., and that these men should be placed on the county payroll and have the same status as other county employes. Under Rosser's testimony, the work was done under the direction, supervision and control of the county engineer, but such an arrangement did not make Davis and Sons, Inc., an employe as it supplied, furnished and paid the labor for the benefit of the county and, therefore, it was a contractor: Brooks v. Buckley & Banks, 291 Pa. 1.

It was contended further that one of the chief reasons for not entering into a contract was that various kinds of work had to be done and they knew that they

would be confronted with unusual and unforseen problems; and that, therefore, it was impracticable and not economical to attempt to award a contract by advertising, etc. Engineers testified, however, that there were no complications in connection with the main job that would have precluded a compliance with the law. If there were perplexing problems in shifting the trolley tracks, etc., there were certainly no difficulties involved in the work done on these three separate roads which would have prevented awarding a contract as required by law.

The agreement with Davis and Sons, Inc., had all the essential elements of, and constituted, a contract and came under the provisions of the Act. of 1895, as amended, supra.

Our courts have uniformly held that it is the legislative intent where work is to be done for a municipality that there should be free and competitive bidding so that fair prices may be procured and collusion to the detriment of the city be prevented. Private negotiations and favoritism are always to be avoided as it invariably results to the disaster of the municipality. As was said in Smith v. City of Phila., 227 Pa. 423, "The infirmities of human nature, the natural disposition to favor friends, personal and political, and the various motives which influence public officers to depart from a strict and rigid adherence to the obligations that rest upon them should be held strictly within the limits of the powers conferred upon them."

The appellants cite Ruggles v. Moore, 97 Pa. Superior Ct. 47, where the question arose under the Act of May 31, 1919, P. L. 355, as to whether the commissioners who were required to keep bridges in repairs were compelled to award a contract for such work in every case or whether they could do the work themselves. It appears that the commissioners purchased the paint and employed painters to apply it. In other

words, they did the work themselves which distinguishes it from the case under consideration.

The appellants in the eighth, ninth and tenth assignments of error complain of the refusal of the court to receive a verdict the jury first returned and entering a verdict that had been revised. The jury brought in a verdict finding the defendants guilty on the second, third and fourth counts, and thereupon the court called their attention to the fact that they had not expressed themselves as to the other counts. Upon further consideration the jury returned a verdict, as follows: "We, the jury, find the defendants guilty on counts two, three and four of the indictment and also on any counts or parts of counts pertaining thereto. On the remaining counts and parts of counts, we find the defendants not guilty." The court was entirely within its rights in calling the jury's attention to their inadvertence in not expressly making a return as to the other counts in the indictment. It is always a duty of the court to clarify and make certain a jury's findings. There was only one verdict recorded and it leaves no doubt in one's mind that the jury found these defendants guilty on the three counts. "Where a verdict irregularly formed is moulded into proper form by the trial judge and duly recorded by the clerk before the jury are finally discharged, the form prepared in the jury room or handed in the first instance to the clerk, has no significance whatever, and is no part of the record": Com. v. Floherty, 25 Pa. Superior Ct. 490. But in this case, the finding of guilty on the three counts only was equivalent to the finding of not guilty on the remaining counts: Com. v. Curry, 285 Pa. 289.

The remaining assignments of error relate to the sentence imposing a fine of one hundred dollars and imprisonment in the county prison for a term of one year and removal from office. Article VI, Sec. 4, of

our Constitution, provides that "All officers for a term of years shall hold their offices for the terms respectively specified, only on the condition that they so long behave themselves well; and shall be removed on conviction of misbehaviour in office or of any infamous crime."

In the case of Com. ex rel. v. Davis, 299 Pa 276, Mr. Justice SIMPSON, in an elaborate discussion of this section, held that a conviction of misbehaviour in office subjects all officers to removal. Citing Com. v. Shaver, 3 W. & S. 338 (340), wherein the court said, "It is very clear that sheriffs, as well as all other officers, holding their respective offices for a term of years only, are embraced within this provision of the Constitution, so that the respondent, though duly elected and commissioned to the office of sheriff, cannot claim to hold it after he has been convicted of misbehaviour in it, or any infamous crime."

This squarely disposes of the question as to the authority of the court to remove the defendants from their office.

The appellants strongly maintained that the court was without power to impose a prison sentence as under the Act of April 15, 1834, P. L. 341, Sec. 24, the defendants are subject to a fine only in the sum of one hundred dollars. This statute provides for the *neglect* or *refusal* of the commissioners of a county to perform any duty required of them by law. This indictment was drawn under and the defendants are subject to the penalty imposed by the common law and charges a *wilful misconduct* which is a different offense from that provided for in the 1834 statute, and, therefore, it does not govern this case.

The question then arises, do the acts charged and proven amount to an offense at common law? Blackstone in his fourth book, page 122, states: "Disobedience to any of these commands is a high mis-

prison and contempt; and so, lastly, is disobedience to any act of Parliament where no particular penalty is assigned, for then it is punishable like the rest of these contempts by fine and imprisonment at the discretion of the King's Courts of Justice."

In Com. v. Silsbee, 9 Mass. 417, cited with approval in Com. v. McHale, 97 Pa. 397 (409), the court said, "It is a general principle that where a statute gives a privilege, and one wilfully violates such privilege, the common law will punish such violation." A priori, a violation of a mandatory duty, would be a higher offense and, therefore, punishable. Judge PAXSON in Com. v. McHale, supra, calls attention to what Blackstone said in chapter 13 of Vol. 4, of the Sharswood Edition, in defining a common law offense—"The last species of offences which especially affect the Commonwealth are those against the public police or economy. By the public police and economy, I mean the due regulation and domestic order of the kingdom, whereby the individuals of the state, like members of a well-governed family, are bound to conform their general behaviour to the rules of propriety, good neighborhood and good manners, and to be decent, industrious and inoffensive in their respective stations. This head of offenses must therefore be very miscellaneous as it comprises all such crimes as especially affect public society."

Wharton in his work on Criminal Law, 10th Edition, Vol. 2, Sec. 1568, said, "It is clear that when the law imposes on an individual a ministerial office, then not only is disobedience to the requirements of that law in respect to such office indictable, but an indictment lies for such wilful or negligent misconduct in such office as works injury to the public, or to an individual. For mere error of judgment, however, no indictment lies, unless for an act made specially indictable by statute irrespective of intent."

It would seem to follow that one who wilfully neglects to perform any duty which he is bound by statute to perform is guilty of a misdemeanor at common law, and if so, it is within the discretion of the court to impose a prison sentence if a penalty, as, in this statute, is not prescribed.

We have very carefully examined the testimony and the able briefs that have been presented as we are impressed with the importance of this case and after giving it our best consideration, we are lead to the conviction that the able trial judge below was within his judicial authority to impose a prison sentence.

The issues of fact were carefully submitted to the jury and the rights of the defendants were adequately safeguarded. We find no error in this record that would warrant our interference.

All of the assignments of error are overruled and the judgments are affirmed, and it is ordered that the defendant in each appeal appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part of it which had not been performed at the time his appeal was made a supersedeas.