## Commonwealth, Appellant, v. Hubbs (No. 2).

Argued May 5, 1939.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*Bryan A. Hermes,* with him *Thomas I. Guerin,* Deputy Attorneys General, *Claude T. Reno,* Attorney General, *James N. Lafferty* and *Gilliat G. Schroeder,* Assistant Deputy Attorneys General, for appellant.

*Thomas D. McBride,* for appellee.

OPINION BY CUNNINGHAM, J., October 10, 1939:

This is the companion appeal referred to in the preceding opinion in *Com. v. Hubbs (No. 1),* 137 Pa.

Superior Ct. 229, 8 A. 2d 611. A recital of the procedure which resulted in the quashing of the present indictment returned at No. 650 November Sessions, 1938, of the court below, as well as the perjury indictment at No. 649 of that term, will there be found.

The indictment with which we are now concerned contains four common law counts, each reciting that the defendant, from March 10, 1937, to the date of the finding of the indictment (November 22, 1938), was a public officer,—Superintendent of the Bureau of Police, Department of Public Safety of the City of Philadelphia— charged with a duty to cause the laws of the Commonwealth to be executed and enforced. The counts recite that "in disregard, breach and violation of his duties as Superintendent of the Bureau of Police, on March 10, 1937, and on divers other days and times between that date and the day of the finding of this indictment:

"1. ...... the said Edward Hubbs, did *wilfully* omit, neglect and refuse to cause the laws of the Commonwealth prohibiting the maintenance, setting up, management and control of *gambling houses* where money or other valuable things were played for, staked or betted with bards, dice and other means, to be executed and enforced. ......

"2. ...... the said Edward Hubbs, did *negligently* omit, neglect and refuse to cause the laws of the Commonwealth prohibiting the maintenance, setting up, management and control of *gambling houses* where money or other valuable things were played for, staked or betted with cards, dice and other means, to be executed and enforced. ......

"3. ...... the said Edward Hubbs, did *wilfully* omit, neglect and refuse to cause the laws of the Commonwealth prohibiting persons from engaging in *pool selling,* and *book making* to be executed and enforced. ......

"4. ...... the said Edward Hubbs, did *negligently* omit, neglect and refuse to cause the laws of the Com-

monwealth prohibiting persons from engaging in *pool selling* and *book making* to be executed and enforced." (Italics supplied)

The quashing of the indictment was sought upon three grounds: "1. Defendant is not a public officer and is therefore not subject to indictment for misbehaviour in office. 2. All counts of the indictment are insufficient because they do not charge corruption. 3. The wording of the indictment is too general."

Defendant's first contention was properly overruled by the court below. See *Richie v. Philadelphia*, 225 Pa. 511, 74 A. 430, *Com. v. Miller*, 94 Pa. Superior Ct. 499.

In disposing of the second and third propositions advanced in behalf of the defendant, LAMBERTON, J., correctly said: "Misbehaviour in office may arise from failure to perform a statutory duty, or from failure to perform a common law duty. In either case the indictment must charge more than negligence." As the second and fourth counts merely charged the defendant with having *negligently* omitted and refused to cause the laws against setting up gambling houses and against engaging in pool selling and book making to be enforced, they were properly quashed.

The only counts requiring consideration upon this appeal by the Commonwealth are the first and third, charging that the defendant, a public officer, (having a duty to cause the laws of the Commonwealth to be executed and enforced), "not regarding the duties of his said office but perverting the trust imposed in him and in disregard, breach and violation of his duties, ...... did *wilfully* misbehave himself in office," in the manner above recited.

If these counts had charged with reasonable particularity the breach of a positive statutory duty of a ministerial nature, we think an averment that the breach was *wilfully* committed would have been sufficient. An indictment, or a count therein, specifically charging a public officer with a wilful breach of a mandatory duty pre-

scribed by a statute would, in our opinion, be a sufficient accusation of having committed a common law misdemeanor: *Com. v. Rosser et al.,* 102 Pa. Superior Ct. 78, 156 A. 751; *Com. v. Kline,* 107 Pa. Superior Ct. 594, 164 A. 124; *Com. v. Brown et al.,* 116 Pa. Superior Ct. 1, 175 A. 748.

In cases of the class just cited the wilful failure to perform a ministerial duty comes within the common law definition of misdemeanor in public office, and it is not necessary to aver or prove that the officer acted with a corrupt, fraudulent or dishonest intent.

But where the nature of the duty is such as to permit the exercise of *discretion,* there must be present the additional element of an evil or corrupt design to warrant conviction: *Com. v. Miller,* supra. "Malfeasance in office cannot be charged except for breach of a positive statutory duty or for the performance of a discretionary act with an improper or corrupt motive: (authorities)." *McNair's Petition,* 324 Pa. 48, 55, 187 A. 498.

The reason underlying the rule is that public officers are not to be hampered in the performance of discretionary duties by the fear of criminal prosecution for an error of judgment committed in good faith.

Neither of the counts under consideration contains any reference to a statute prescribing the duties the defendant undertook to perform by accepting appointment to his office. An examination of the only legislation which seems to have any bearing upon the office described in the indictment—Superintendent of the Bureau of Police, Department of Public Safety of the City of Philadelphia—discloses this situation: By the Act of June 25, 1919, P. L. 581, Art. 2, §6, 53 PS §2927, known as the City Charter Act, the Mayor of Philadelphia is "responsible for the good order and efficient government of the city." Article 5, §§1 and 3, 53 PS §§3021, 3023, provides that "There shall be a department of public safety of which the director of public safety shall be the head," and to him falls "the

care, management, administration, and supervision of
the police affairs and all matters relating to the fire
and police forces." This act makes no specific refer-
ence to the Superintendent of Police. Thus it is ap-
parent that in so far as statutory regulation is con-
cerned, he is directly responsible to the Director of
Public Safety, who, in turn, is responsible to the Mayor,
the latter being primarily accountable for law enforce-
ment in the City of Philadelphia.

The only duties of the defendant which can even be
implied under the City Charter are discretionary in
character. He is a subordinate officer charged with the
general duty of superintending the police force, and his
immediate superior is the **Director of** Public Safety.
Occupying such a position, it is clear that he, as well
as his superiors, must have some discretionary power
and latitude in the performance of their duties. The
number of men at their command is necessarily limited.
When and under what circumstances arrests should be
made or prosecutions instituted must rest in their hon-
est judgment.

We adopt the following excerpt from the opinion of
the court below: "Counts 1 and 3 charge wilful failure,
but do not charge fraud, dishonesty or corruption. It
is obvious that the Superintendent of Police must have
vested in him some discretion in the performance of his
duties. He may suspect that a person is violating the
laws against gambling and yet it may be wise to post-
pone a raid or an arrest until more evidence is secured,
or until other persons concerned may be apprehended.
He must work largely through subordinates and it may
well be that all police matters cannot be given imme-
diate attention. He may have to decide whether to use
his men at a certain time for the suppression of gam-
bling, or for the solution of a murder or for the suppres-
sion of a riot. If he used his men for other purposes at
a certain time, even though he acted in perfect good
faith, it would be true that, as the indictment charges,

he 'did wilfully omit, neglect and refuse to cause the laws of the Commonwealth prohibiting the maintenance ...... of gambling houses ...... to be executed and enforced. Had he used his men in a concerted drive against gambling, he might with equal justice be charged with failing to enforce the law against murder, or riot or some other crime. Obviously this is a case where there can be no crime unless the motive be bad, and all counts of the indictment are insufficient because there is no charge of fraud, dishonesty or corruption."

But, argue the representatives of the Commonwealth, the term "wilfully" *implies* an evil intent and a corrupt purpose. In support of their contention they cite *Potter v. U. S.,* 155 U. S. 438, and *Felton v. U. S.,* 96 U. S. 699. Both cases relate to the meaning of the word as used in defining certain statutory crimes. We have hereinbefore discussed the effect of the word in indictments for failure by a public officer to perform statutory duties.

An examination of the opinions cited shows that the court placed a strict construction on the statutes, feeling that the congress could not have intended to permit a conviction in the absence of bad faith on the part of one committing the prohibited act. The court viewed the term in the light of the purposes sought to be achieved by the statutory provisions. Therefore, these decisions cannot be said to hold that "wilfully" always implies bad faith. Just the contrary is true.

"Wilfully" in common parlance does not signify corruptly. To so construe it would be to give it a meaning far beyond its usual connotation. Webster's Dictionary defines it as "self-determined; voluntary; intentional." This is its natural meaning. It is used to distinguish an intentional act from an involuntary one. This is the import it has received in the decisions of this state. In *Steinman v. McWilliams,* 6 Pa. 170, 178, the Supreme Court, in discussing the charge of the trial court in a perjury case, said: "The word, *wilfully,* does not mean,

in the common acceptation of the term, corruptly; ......" See also *Com. v. Drum,* 58 Pa. 9, 16.

The contention of counsel for the Commonwealth that they have inferentially charged the defendant acted from a dishonest and corrupt motive is without the slightest merit.

Having reached the conclusion that the indictment now before us is inherently defective in that it does not charge any criminal offense, either under our Penal Code or at common law, we need not consider in detail the further ground assigned by the court below for quashing it, viz; "It states the conclusion that a crime has been committed rather than the facts constituting that crime." Citing such authorities as Sadler on Criminal Procedure, Par. 212; May's Criminal Procedure, 3d Ed. Par. 98; *Com. v. Gillespie,* 7 S. & R. 469; *Com. v. New Bethlehem Borough,* 15 Pa. Superior Ct. 158; *Com. v. Swallow,* 8 Pa. Superior Ct. 539; and *Com. v. Campbell,* 116 Pa. Superior Ct. 180, 176 A. 246, the court below held the indictment is so vague and general in its averments that it does not charge the commission of any single offense with the particularity required by those decisions. It is true that the indictment does not give the location of any alleged gambling house, the name of its proprietor or operator, or the date or dates of its alleged operation. It was further held that these defects were not the kind that might be cured by a bill of particulars. Be that as it may, the order left open the door for the preparation and presentation to a grand jury of a new indictment properly charging the defendant with having dishonestly, corruptly, and with an evil intent, failed to perform his discretionary official duties. If the representatives of the Commonwealth avail themselves of this privilege, it will be well for them to charge the offense with such clearness and certainty as to show the substance, time and place of the alleged offense, and inform the defendant of what he is called upon to answer.

Order affirmed.

KELLER, P. J., RHODES and HIRT, JJ., dissent from that portion of the decision of the majority of this court which affirms the action of the court below in quashing counts one and three of the indictment, being of opinion that the averments therein, that the defendant "did wilfully misbehave himself in office," in that "he did wilfully omit, neglect and refuse to cause the laws of the Commonwealth" against gambling to be enforced, sufficiently charged the commission of a common law offense.