## Commonwealth *v.* Campbell, Appellant.

*Criminal law —Indictment — Practicing medicine without license—Act of May* 18, 1893, *P. L.* 94.

An indictment charging that the defendant did " engage in the practice of medicine and surgery without having complied with the provisions " of the Act of May 18, 1893, P. L. 94, sufficiently sets forth the violation of the act which forbids anyone to " enter upon the practice of medicine or surgery within the state, unless he or she has complied with the provisions of this act."

An information against a person for practicing medicine without having complied with the provisions of the Act of May 18, 1893, P. L. 94, made by a constable in his official title, and upon information and belief, is sufficient to support an affidavit. The addition of the affiant's official character is mere surplusage.

*Criminal law—Indictment—Information.*

It is not required that an information should meet the requirements of an indictment. It is enough if it contains the essential elements of an offense, and it need not negative matters of defense arising from statutory exceptions.

*Criminal law—Plea of autrefois acquit—Indictment—Evidence.*

A plea of autrefois acquit is not sustained where the indictment sets forth an offense subsequent to the acquittal, and the evidence is confined to subsequent violations of the statute.

Argued Nov. 17, 1902. Appeal, No. 10, April T., 1903, by defendant, from judgment of Q. S. Mercer Co., Jan. T., 1902, No. 16, on verdict of guilty in case of Commonwealth v. C. C. Campbell, alias Charles Cunningham Campbell. Before BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ. Affirmed.

Indictment for illegally practicing medicine. Before MIL-
LER, P. J..

- Verdict of guilty.

On motion for arrest of judgment MILLER, P. J., filed the fol-
lowing opinion: ·

The defendant is indicted on two counts, the first count, prac-
ticing medicine and surgery without having exhibited a license
to the prothonotary of Mercer county, the second count, keep-
ing an office open for the practice of medicine and surgery
without having been duly registered. He was convicted as in-
dicted. A motion was made for an arrest of judgment, and
subsequently twenty-one reasons in support of said motion were
filed. . They may all be embraced under three heads: 1. In re-
fusing the motions of the defendant to quash the indictment.
2. In overruling the pleas of the defendant. 3. In permitting
the jury to pass on the second count of the indictment.

First. The reasons set forth in the several motions of the
defendant for quashing the indictment are: ·

1. That the information upon which the warrant was issued
was made by M. Jenkins, constable, upon information and be-
lief, and without any actual knowledge on the part of the pros-
ecutor, and did not purport to have been made by direction
of the court or district attorney; and that the jurat was made
by M. Jenkins, constable, and sworn to him as such and not as
an individual.

The transcript in the case shows that the information was
made on oath of M. Jenkins, constable, but shows that it was
made on information received and which the informant "verily
believes to be true," and further shows that the person making
the information verily believed all of the facts set forth in the
information.

· 2. That the defendant was deprived of his rights to a pre-
liminary hearing before the justice of the peace.

The transcript shows that the information was made on Oc-
tober 18, 1901, that a warrant issued, directed to A. K. Tate,
constable of the borough of Greenville, on October 18, 1901.
The return on the warrant is as follows: " November 1, 1901.
Constable A. K. Tate returns warrant, 'Do not find in my
bailiwick.'"

The defendant in his motion to quash the indictment for the second reason above sets forth that he was a resident of Greenville, and on this motion to quash the court made the following order: " And now, January 29, 1902, this motion to quash the indictment is overruled for the following reasons: the transcript shows on its face that the information was made and sworn to October 18, 1901; that the warrant was issued by the justice of the peace October 18, 1901, directed to A. K. Tate, constable of the borough of Greenville, and the court takes cognizance of the fact that A. K. Tate is constable of the borough of Greenville where the defendant resides; that the said A. K. Tate returned said warrant November 1, 1901, 'Do not find in my bailiwick.' "

3. Defendant moved to quash the indictment for the reason that E. Maud Womer and James Callen testified before the grand jury as witnesses in the case, and their names were not marked by the district attorney on the bill of indictment, nor were they sworn by the court.

To determine the question of fact set forth in this reason, the court heard the testimony of W. A. Filson who was a member of the grand jury and who acted as clerk of the grand jury under the directions of the district attorney. In refusing the motion to quash for the reason set forth above, the court made the following order: " And now, January 29, 1902, it appearing by the testimony of W. A. Filson that he was a member of the grand jury that found this indictment, and that at the request of the district attorney he acted as clerk and that he wrote down the names of all the witnesses who appeared before the grand jury in this case on the indictment; and it appearing to the court that the name of Miss Moore was written for the name Miss Womer, and that at the time Mr. Filson wrote the name Miss Moore, Miss Womer was the witness whom he thought was Miss Moore; said Filson having during his testimony identified Miss Womer as the witness; and it further appearing that the name of James Callen appears indorsed on the indictment under the name of Mr. J. Calahan, and that Mr. Filson thought that was the witness's name ; and the court being satisfied that the names of all the witnesses that appeared before the grand jury and were sworn were indorsed on the indictment before the indictment was returned to court, this motion is overruled."

We are of opinion that no error was committed in refusing the several motions of the defendant to quash the indictment, and all reasons in arrest of judgment which are based on the action of the court in refusing to quash the indictment are overruled and refused.

Second. The pleas of the defendant are as follows:

1. That he had been lawfully acquitted of the offenses charged in the indictment in this case at No. 9, October sessions, 1899, and also pleads that he had been lawfully acquitted of the offense charged in the second count of the indictment in this case at No. 13, June sessions, 1901.

On these pleas the court made the following order: "And now, January 29, 1902, the special plea of the defendant of autrefois acquit is overruled for the reason that the offenses charged against the defendant in the indictment at No. 16, January sessions, 1902, were continuing offenses, and an acquittal of any or all of the offenses charged in this indictment at No. 9, October sessions, 1899, the verdict having been rendered October 27, 1899; or an acquittal under the indictment at No. 13, June sessions, 1901, the verdict having been rendered June 25, 1901, would not be a bar to an indictment charging the defendant with having committed the same offenses since June 18, 1901, the date of the finding of the last-mentioned indictment; the verdict in said case having been rendered June 25, 1901, "the special plea of autrefois acquit is therefore overruled."

In the trial on the indictment as the record will show no evidence was admitted of any offenses alleged in the indictment of having been committed prior to June 18, 1901, and the evidence admitted was all confined to acts committed by the defendant subsequent to June 18, 1901, the date of the finding of the last-mentioned indictment.

2. That the court should have submitted to the jury to find as a question of fact whether the defendant had been tried of the same offenses charged in the indictment and acquitted before the jury was sworn as to the facts charged in the indictment at No. 16, January sessions, 1902.

In the view that the court took of the law this would have been useless. It is true that the defendant was substantially charged in the indictments at No. 9, October sessions, 1899, and No. 13, June sessions, 1901, of the same offenses charged

in this indictment and was acquitted. But we held and still hold that the trial and acquittal of the same offenses charged in this indictment would not be a bar to the prosecution of the defendant on the same charges committed since the date of the finding of the indictment immediately preceding this one, to wit: that at No. 13, June sessions, 1901. To hold that an acquittal under such circumstances would be a bar to any further prosecution would be to legally determine that one claiming to be a physician could practice medicine and surgery in Pennsylvania without first obtaining a license duly granted to him under the act of May 18, 1893, and when once tried and either acquitted or convicted of that offense could thenceforth practice medicine and surgery in Pennsylvania with immunity without being qualified as required by the act of 1893.

3. That the second count of the indictment does not allege that the defendant entered upon the practice of medicine and surgery after the date of the passage of the act of 1893 or after the passage of any of the acts of assembly regulating the practice of medicine and surgery or the registry of physicians and surgeons.

The second count of the indictment charges that the defendant did "unlawfully and wilfully then and there engage in the practice of medicine and surgery, and did then and there open an office and occupy the same for said practice of medicine and surgery without first having then and there duly and lawfully registered himself or caused himself to be duly and lawfully registered as a regularly qualified physician and surgeon in the office of the prothonotary of the court of common pleas of the said county."

The Acts of June 8, 1881, P. L. 72, and May 18, 1893, P. L. 94, are both in force, although the qualifications relative to the registration of practitioners of medicine and surgery are not the same. Both acts require that physicians and surgeons shall be registered. It is true that the 14th section of the act of 1893 provides that "no person shall enter upon the practice of medicine or surgery in the state of Pennsylvania unless he or she complied with the provisions of this act," etc. The defendant contends that this only applies to one who enters upon or "commences" the practice of medicine, and that if one does enter upon the practice of medicine or surgery and is prosecuted,

tried and either convicted or acquitted, that such conviction or acquittal is a complete bar to any subsequent prosecution against the same person for practicing medicine or surgery under the acts of 1881 and 1893. For a court to so hold would absolutely annul the whole intention and import of the two acts. Even if we were in doubt about the matter we ought not to arrest the judgment in this case but rather refuse the motion; and if the defendant desires it he may review our action and get a decision from an appellate court which would be binding throughout the state on all of the lower courts.

This practically disposes of all the reasons of the defendant in arrest of judgment. The judgment ought not to be arrested unless the law in the case imperatively demands such action. The defendant had been practicing medicine in the county of Mercer since early in January, 1897, without either having a license issued to him under the act of 1893, or without being duly and legally registered as provided by the acts of 1881 and 1893. It is true that on January 13, 1897, as will appear on page 10 of the medical register of Mercer county, the defendant caused himself to be registered without producing to the prothonotary a license which had been duly granted to him as provided by the act of 1893; but by proceedings had in the court of common pleas of Mercer county the said record was corrected by the court, for the reason that the registry had been obtained illegally and fraudulently. An appeal was taken from this action of the lower court at No. 36, January term, 1900, to the Supreme Court of the state for the western district, and on January 17, 1901, the Supreme Court filed an opinion affirming the action of the common pleas of Mercer county, the report of said case to be found in 197 Pa. 581.

The evidence taken in the said proceedings as well as the evidence that had been taken in court on the trials that had been had in the court of quarter sessions against the defendant, clearly show that the defendant had appeared before the examining board provided for by act of 1893 twice, was examined by said board and failed to get a license, and that he has never had a license from said board. This has never been denied by the defendant, and yet in the face of these facts he has continued to practice medicine and surgery since January of 1897.

The Supreme Court in the case above referred to as found in

197 Pa. 581, rendered its decision on January 7, 1901, affirming the lower court in striking the name of the defendant from the medical register of Mercer county on the ground that he was illegally registered, the record in that case showing that he had been registered by presenting his diploma from a medical college to the prothonotary.

On January 14, 1901, seven days after the aforesaid decision of the Supreme Court, the defendant again, as shown by the medical register of Mercer coutny, presented himself in the prothonotary's office, and by some means unknown to the court, induced the prothonotary to again register him on his diploma, in accordance with the act of assembly entitled "An act to provide for the registration of practitioners of medicine and surgery approved June 8, 1881." He persists in practicing medicine although it has been clearly demonstrated again and again in this court that he has no license. We do not recite these facts to criticise the defendant. Doubtless he believes that he is proceeding legally, but we can see no reason why he should be made an exception to all the other practitioners in Mercer county who have graduated since the act of 1893.

### ORDER.

And now, April 28, 1902, the motion in arrest of judgment is overruled and refused and the clerk of the quarter sessions is directed to enter judgment on the verdict, and the defendant is ordered to appear before the court that the sentence of the law may be imposed.

*Error assigned* among others was in refusing to arrest the judgment.

*W. C. Pettit*, with him *J. C. Miller*, for appellant.—The indictment should have charged defendant with entering upon, but inasmuch as the commonwealth well knew that defendant had entered upon the practice in 1897, and had been twice since tried and acquitted of the offenses endeavored to be charged in this indictment, they realized that if the indictment read that way they would be met at once by these verdicts of former acquittal, and therefore, they changed the charge from entering upon to engaging. We submit, however, that this

was usurping the functions of the legislature : Updegraph v. Com., 11 S. & R. 394, 409.

A former conviction of the same offense may therefore always be pleaded; and if the truth of such plea be established, it is a plain bar to another judgment against the accused : Solliday v. Com., 28 Pa. 13 ; Com. v. Demuth, 12 S. & R. 389.

*Manley O. Brown,* with him *J. M. Campbell,* district attorney, and *A. J. Gillispie,* for appellee.—An information is sufficient to support a warrant of arrest if made " to the best of affiant's knowledge, information, and belief: " Com. v. Green, 185 Pa. 641 ; Com. v. Brenan, 193 Pa. 567.

Keeping in mind the well-settled principle that an indictment is sufficient which " substantially charges the offense set forth in the act," we submit that the indictment does substantially set forth such offense : Com. v. Branthoover, 31 P. L. J. (N. S.) 267.

In a plea of autrefois acquit, it is the duty of the court to declare the legal effect of the record pleaded : Com. v. Trimmer, 84 Pa. 65.

OPINION BY SMITH, J., January 20, 1903 :

The Act of May 18, 1893, P. L. 94, regulating the practice of medicine and surgery, requires the registration of the practictioner in the prothonotary's office, in the county in which he wishes to practice, fixes the conditions that entitles him to registration, and forbids him to " enter upon the practice of medicine or surgery within the state, unless he or she has complied with the provisions of this act." In the case before us, the defendant has been tried and sentenced for practicing without having complied with these provisions in the matter of registration.

The first question to be determined is whether the indictment charges a violation of the statute. The first count avers that on January 18, 1902, in the county of Mercer, the defendant " did unlawfully and wilfully engage in the practice of medicine and surgery without having complied with the provisions " of the act of 1893, " in that he did not then and there exhibit to the prothonotary of the court of common pleas of the said county a license duly granted to him." The second count avers that the defendant " did then and there engage in the practice of

medicine and surgery, and did open an office and keep the same for the said practice of medicine and surgery, without first having caused himself to be duly registered as a regularly qualified physician and surgeon in the office of the prothonotary of the court of common pleas of said county.

The appellant's contention is that the averment charging that he " did engage " in the practice of medicine and surgery fails to set forth a violation of the act of 1893, since that act forbids an unregistered person to " enter upon " the practice; that to enter upon the practice is to begin it, while to engage in the practice does not imply a beginning of it. In our view, however, there is no good reason for such a distinction. To enter upon a course of action is, unquestionably, to engage in it; and, in many instances, to engage in it is to begin it; as, to engage another in conversation, to engage in debate, to engage the enemy, to engage as surety, etc. As far as the import of the words is to be considered, the indictment charges the offense " substantially in the language of the act of assembly," and. " so plainly that the offense charged may be easily understood by the jury," and the defendant may know what he is to meet. More than this is not required. The gist of the offense is the practice of medicine and surgery by an unregistered, and hence, presumptively, an unqualified person. If an indictment will lie only for beginning such practice, the statute may be disregarded with impunity after the statute of limitations has closed on the initial offense. Moreover, there is no evidence that the defendant had entered upon or engaged in practice earlier than in the instances shown on the trial. His acquittal on the indictments charging him with unlawfully practicing previous to June 18, 1901, if it proves anything, proves that he had not then entered upon or engaged in practice.

The other reasons for quashing the indictment are equally without merit. The warrant was properly issued on the affidavit charging the offense upon information and belief. The addition of the affiant's official character was mere surplusage, and in noway affected the affidavit. Neither multifariousness or duplicity in the affidavit can be objected to; it is not required that an information should meet the requirements of an indictment; it is enough if it contains the essential elements of an offense, and it need not negative matters of defense aris-

ing from statutory exceptions. Aside from an ex' parte affidavit, there was nothing to impeach the correctness of the constable's return. The witnesses before the grand jury were properly sworn, and the indorsement of their names on the indictment was regularly made.

The pleas of autrefois acquit were not sustained. The indictment sets forth an offense subsequent to the acquittal, and the evidence was confined to subsequent violations of the statute.

In the matters embraced in the tenth specification, the trial judge was clearly right. The duty of a jury is to give a verdict in accordance with the evidence and charge of the court, and not upon their own view of justice.

The rulings of the trial judge upon the offers of evidence, and in the answers to the defendant's eighth point, and the charge as a whole, are so obviously correct that discussion of them is unnecessary. Nothing in the assignment of error requires further discussion.

Judgment affirmed.