Commonwealth *v.* J. & M. Cartusciello, Appellants.

Argued September 29, 1930.

Before TREXLER, P.

J., Keller, Linn, Gawthrop, Cunningham, Baldrige and Whitmore, JJ.

*John Memolo,* and with him *David J. Reedy,* for appellant.—A wife is competent to make an information charging her husband with adultery: Commonwealth v. Bomberger, 16 Dist. 371; Commonwealth v. Geary, 9 Pa. C. C. R. 60; Commonwealth v. Eberly, 22 Lanc. Rev. 70; Commonwealth v. Leslie, 14 Dict. 831; Commonwealth v. Barr, 25 Pa. Superior Ct. 609.

*Otto P. Robinson,* and with him *John J. Owens,* for appellee.—A spouse is not a competent person to swear out an information against the other spouse: Commonwealth ex rel. Boyd v. Jailor, 1 Grant 218; Sadler Crim. Proc. in Pa., Sec. 63.

Opinion by Linn, J., November 20, 1930:.

Michael Cartusciello, an alderman in the City of Scranton, and his brother, John Cartusciello, a licensed detective, were charged in one indictment with conspiracy to kidnap, and in another, with common law kidnapping of Albert Ziman; the indictments were tried together, and after a general verdict of guilty, defendants were sentenced on the kidnapping charge. They have appealed.

Motions to quash the indictments were made: (a) as not charging "a violation of the common law or of a penal statute"; (b) that the "indictment is not clear

so that the defendant is notified of the charge against him". The same reasons were asserted in motions to arrest judgment. The motions were properly overruled. The indictment on which they were sentenced charged that appellants, "wilfully and unlawfully did inveigle and entice one Albert Ziman to enter into an automobile, and having so inveigled and enticed said Albert Ziman to enter said automobile, did take forcible possession of his body and did by force and threats and by pressing a revolver to his side and threatening him therewith, wilfully and unlawfully take and remove the said Albert Ziman from the City of Scranton, in the county and Commonwealth aforesaid, to and into the Commonwealth of New Jersey, the said Michael Cartusciello and John Cartusciello then and there not having legal warrant and authority for so taking and removing the said Albert Ziman from the Commonwealth of Pennsylvania to the Commonwealth of New Jersey, and thereby the said Michael Cartusciello and John Cartusciello, did, in the County of Lackawanna and Commonwealth of Pennsylvania on the day and year aforesaid, wilfully and unlawfully kidnap the said Albert Ziman, contrary to the form of the Act of the General Assembly in such case made and provided, and against the peace and dignity of the Commonwealth of Pennsylvania." Appellants contend that no crime is charged, that it does not sufficiently appear whether the crime intended to be charged is kidnapping at common law, or under the Act of April, 1901, P. L. 65, or under section 3 of the Act of May 14, 1878, P. L. 137.

We think it is sufficiently clear that the crime charged is kidnapping at common law and not the crime declared in the statute. What was recently stated in Com. v. DeGrange, 97 Pa. Superior Ct. 186, is pertinent here: "Another contention is that there can be no conviction of a common law offense under the

single count in this indictment because it is charged, inter alia, that the offense was 'contrary to the form of the Act of the General Assembly in such case made and provided', but no statute could be produced. "It is to be noted, however, that the count also charged that the offense was committed 'against the peace and dignity of the Commonwealth of Pennsylvania'. The test whether an indictment for a common law offense is sufficient is prescribed by section 2 of the Act of March 31, 1860, P. L. 427, 433, relating to penal proceedings and pleadings. It provides that 'every indictment shall be deemed and adjudged sufficient and good in law which charges the crime ...... if at common law, so plainly that the nature of the offense charged may be easily understood by the jury'. Appellant also had a constitutional right 'to demand the nature and cause of the accusations against him.' By the indictment, the material parts of which have been quoted, he was fully informed of the nature and cause of the accusation and unless the validity of the count as a common law count is affected by the inclusion of the words 'contrary to the form of the Act of the General Assembly', etc., it is a good common law count: Wharton's Precedents of Indictments and Pleas, Vol. 1, p. 268. It was held and supported by abundant authority in Com. v. Kay 14, Pa. Superior Ct. 376, 383, that these words may be rejected as surplusage where the offense is prohibited by the common law only, and that they may be stricken out of the indictment, or the jury instructed to disregard them, as in effect was done in this case: see also Com. v. Richardson, 42 Pa. Superior Ct. 337, 342."

Now, the Act of April 4, 1901 P. L. 65, makes it a felony to "take, or carry away or decoy or entice away, or secrete any child or person with intent to extort money or any other valuable thing for the restoration or return of such person ......" The in-

dictment did not charge an intent to extort; and it could not have been drawn under the Act of May 24, 1878, P. L. 137, because that act had been repealed by the Act of April 21, 1927, P. L. 327, "Kidnapping at common law is defined to be the forcible abduction or stealing away of a man, woman or child from their own country and sending them into another. It is treated as an aggravated species of false imprisonment, all the ingredients in the definition of the latter offense being necessarily comprehended in the former, with the additional ingredient of carrying the person imprisoned out of his own country and beyond the protection of its laws". 8 R. C. L., p. 296; see also 35 C. J. 903. The element of that definition "carrying the person imprisoned out of his own country and beyond the protection of its laws" is provided when a kidnapped person is taken from the state of his residence to another state of the Union, as was charged here: Norton's Case, 15 W. N. C. 395; Shuster v. Ash, 11 S. & R. 89; U. S. v. Cruikshank, 92 U. S. 542, 549; 26 C. J. 888, 889; Bellows Falls P. Co. v. Com. (Mass.), 109, N. E. 891, 894.

We must, however, sustain the assignments of error complaining of parts of the charge in which the learned trial judge stated to the jury that the warrant offered in evidence charging Albert Ziman with adultery, made on an information sworn to by Ziman's wife, was unlawful on the ground that a wife was incompetent to make the information.

The Commonwealth made out a prima facie case against both defendants on both indictments, and from the evidence the jury may have found the following facts. Albert Ziman lived in Scranton, Pennsylvania. His wife resided in New Jersey. They had been separated six years. On or prior to December 31, 1929, she employed the appellant detective "to make an investigation and determine if her husband was living

in adultery'' in Scranton. One account is that she appeared before the appellant alderman, and made an information charging her husband with adultery; on that complaint the alderman issued his warrant for Ziman's arrest. Instead of delivering that warrant to the constable of the district for execution, the alderman and his brother motored to Ziman's place of residence in Scranton with the warrant, seized him at about 11 P. M., December 31 and took him to the alderman's office. Ziman, however, testified that the warrant was not issued by the alderman until after he was arrested and brought to the alderman's office, when, he says, his wife made the information and the alderman issued the warrant. They declined to permit him to consult counsel or make any effort to get bail, and without hearing and without any form of commitment, imprisoned him in a police station and kept him there two days, the alderman, himself, taking him to the police station. The warrant of arrest bears no official return of its execution. The detective appellant asked Ziman whether he would go to New Jersey and Ziman declined. On January 2, 1930, the alderman had him brought to his office and called some one on the telephone and stated to that person ''I have your man ready.'' He then ordered Ziman to enter a waiting automobile (containing Ziman's wife, and driven by her son by a former marriage). The alderman sat beside Ziman armed with a ''gun'' which he took from a drawer in his desk as he ordered Ziman to enter the car. The alderman declined, when asked by Ziman, to state where they were taking him. They drove a short distance in the City of Scranton until they met the appellant detective and another man; the alderman then got out of the car and this man took his place beside Ziman, the alderman handing the gun to the man and saying ''watch him close;'' ''hold that gun in your hands.'' The alderman also said to the driver

of the car "You go ahead" and "we [both appellants] will follow you". Ziman made unavailing efforts to get assistance by trying to leave the car, and otherwise to attract attention. He was taken to New Jersey and there imprisoned for a month, though on what charge the record does not inform us. There was other testimony that need not now be set forth. All the elements of conspiracy to kidnap and of common law kidnapping were thus made out, the jury having the benefit of the testimony of both appellants.

We need not consider appellant's argument that the court erred in not granting their motion to discharge them, when the Commonwealth rested, on the ground that a prima facie case had not then been made out, further, than to refer to what was said concerning possible procedure at that stage of a trial in Com. v. Smith, 97 Pa. Superior Ct. 157, 161, etc. These appellants did not demur to the evidence; they put in their defense; the refusal of the motion at that stage of the case is not now assignable as error any more than the refusal to enter a nonsuit is assignable in a civil action. The case, relied on to support their argument, Com. v. Byers, 45 Pa. Superior Ct. 37, when rightly understood, does not support it. An examination of the record printed in the paper books in that case shows that the motion (the subject of the second assignment of error, which was sustained) was made at the close of the whole case and not "at the conclusion of the evidence of the state" as the opinion writer said on page 39.

We come, then, to the complaint based on the learned trial judge's instructions that the warrant was unlawful because issued on an information made by Ziman's wife. He instructed the jury: "There is something else in that connection. The warrant, on its face, was unlawful. It was founded upon the oath of the woman herself—founded upon the oath of

Ziman's wife and under the law she was incompetent and the alderman had no right to found any warrant on her complaint.'' Again, he said, ''I call your attention to these things for the simple reason that the Commonwealth's case is this—its allegation is this: That the warrant of arrest for Mr. Ziman was a merely colorable process for the purpose of enabling the Cartusciellos to carry out some agreement that they had with Mrs. Ziman for the purpose of turning the defendant, Ziman, over to the hands of somebody here from New Jersey.'' The subject is referred to in other parts of the charge and is assigned for error.

The Act of May 23, 1887, P. L. 158, section 2 (b) as amended (1911, P. L. 269), provides: ''Nor shall husband and wife be competent or permitted to testify against each other, or in support of a criminal charge of adultery alleged to have been committed by or with the other, except that, in proceedings for desertion and maintenance and in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, each shall be a competent witness against the other, and except also that either shall be competent merely to prove the fact of marriage in support of a criminal charge of adultery or bigamy alleged to have been committed by or with the other.'' In Com. v. Barr, 25 Pa. Superior Ct. 609, a wife's paramour was charged with adultery; the indictment was quashed below because the information had been made by the husband, the court holding that the husband's incompetency to testify against his wife included a prohibition against his causing a prosecution to be brought even though he should not testify as a witness. This court held that while the evidence act rendered either spouse incompetent to testify against the other, it did not deprive either of the right ''to invoke the aid of our criminal courts to punish the despoilers of his [or her] home ......''; and it was

added that if any justification for the distinction were desired it would be found in necessity; also see Wigmore, Evidence Vol. 4, sec. 2239; the order quashing the indictment was reversed. For the same reason that construction of the evidence act, and of the common law, is equally applicable in dealing with a warrant based on the information of either spouse charging the other with adultery.

While the legality of a warrant charging one spouse with adultery based on information made by the other has not been passed on by this court since the decision in Com. v. Barr, the subject has been considered in courts of first instance and the prevailing view is that such proceedings are lawful: Com. v. Leslie, 14 D. R. 831, (1905) Phila. Co., VON MOSCHZISKER, J.: Com. v. Snyder, 21 D. R. 731 (1912), Phila. Co., FERGUSON, J.; Com. v. Bomberger, 16 D. R., 371 (1906), Lanc. Co., LANDIS, P. J.; Com. v. Serence, 30 D. R. 876 (1920), Berks Co., ENDLICH, P. J. We have been referred to, and have found, no cases decided since Com. v. Barr holding otherwise. Of course, one spouse cannot testify against the other in a prosecution except as permitted by the statute; but an indictment charging the husband's adultery will not be quashed merely because his wife appeared before the grand jury as a witness if "it nowhere appears that she testified against her husband contrary to law"; and, if her name appears on the back of the indictment as a witness, "in the absence of any information as to what she testified to, we must presume she was examined only as to matters to which she was a competent witness": Com. v. Mosier, 135 Pa. 221, 235; see generally on the subject, Wigmore, Evidence, Vol. 4, sections 2227-2245. But it is said that a spouse is disqualified from making the information because an information can only be made by a party competent to testify in the case; Com. v. Barr, supra, holds otherwise. The magistrate, before he issues his

warrant, must be satisfied from facts sets forth in the information that sufficient and probable cause, within Article I, section 8 of the constitution exists for issuing it, but he may be so satisfied by an affiant whose evidence would be excluded as hearsay at the trial of an indictment subsequently found; in Com. v. Campbell 22 Pa. Superior Ct. 98, the information was sworn to by a constable acting on information and belief; see also Com. v. Green, 185 Pa. 641, 649; Com. v. Schwartz, 82 Pa. Superior Ct. 369.

We are of opinion that the warrant was not unlawful merely because issued on the information of Ziman's wife. While there is no doubt that the evidence in the record would support a finding that unlawful use was made of the warrant issued by appellant alderman, if the jury chose so to conclude, the instruction that the warrant was unlawful was, in the circumstances, prejudicially erroneous. The assignments raising the point are sustained, and in each appeal the judgment is reversed and a new trial is awarded.