Commonwealth ex rel. Connor et al. v.
Meehan, Sheriff

*Laurence H. Eldredge*, for Commonwealth.

*Thomas D. McBride* and *Lemuel B. Schofield*, for defendant.

Bok, J., May 20, 1949.—This is a proceeding on a writ of habeas corpus. Defendants were arrested for violations of sections 14 and 43(*b*) of the Magistrates' Court Act of June 15, 1937, P. L. 1743, 42 PS §§1114 and 1144.

I sat as committing magistrate, and upon a hearing being waived, held defendants for court. They petitioned at once for a writ of habeas corpus, and the Commonwealth produced evidence of one specimen violation, which was agreed upon as being sufficient for the purpose of testing the constitutionality of the act. Bail was then allowed, pending consideration and disposition of the writ.

The writ must be denied.

The sections of the act in question read as follows:
"Section 14:

"No continuance of a hearing of a criminal case shall be granted by a magistrate, unless the person requesting the continuance shall state, under oath, his or her reason therefor, and the reason stated, together with the name of the party requesting the same, shall be noted by the magistrate in his docket, and shall be returned as a part of the transcript of the case: Provided, That if any case shall be continued by a magistrate of his own motion, such continuance, and his reason for his action, shall be set forth at length by the magistrate in his docket and returned as part of the transcript of the case."

"Section 43:

"It shall be unlawful for any magistrate to . . .

"(b) Allow a further hearing in any criminal case without complying with the provisions of section fourteen of this act."

It should be said at the outset that the act has had general constitutional approval from the Supreme Court in Rutenberg et al. v. Philadelphia et al., 329 Pa. 26 (1938), in these words:

"Dealing then with what may be called the provisions that have to do with criminal or non-civil matters, we are of opinion that in this proceeding no general constitutional infirmity has been brought to our attention. As in all instances where this court is required by the pleadings to deal in general with a statute, we leave open, until properly raised, and after full argument, the question whether any particular Section or part of an act is invalid in circumstances that may then be presented: Commonwealth ex rel. v. Snyder, 279 Pa. 234."

Relators' first complaint is that the act violates certain provisions of the State Constitution, as follows:

Article III, sec. 7 of the Pennsylvania Constitution provides, inter alia, as follows:

"The general assembly shall not pass any local or special law . . . regulating the practice or jurisdiction of, or changing the rules of evidence in, any judicial proceeding or inquiry before courts, aldermen, justices of the peace, sheriffs, commissioners, arbitrators, auditors, masters in chancery or other tribunals. . . ."

Article III, sec. 7, also provides:

"The general assembly shall not pass any local or special law . . . regulating the fees, or extending the powers and duties of aldermen, justices of the peace, magistrates or constables. . . ."

Article V, sec. 26, provides as follows:

"All laws relating to courts shall be general and of uniform operation, and the organization, jurisdiction and powers of all courts of the same class or grade, so far as regulated by law, and the force and effect

of the process and judgments of such courts, shall be uniform. . . ."

The argument is made that while the Constitution distinguishes between Philadelphia magistrates and justices of the peace or aldermen in other counties with respect to civil jurisdiction, it does not do so with respect to criminal jurisdiction. In consequence, the legislature must treat magistrates alike throughout the State and may not constitutionally provide a different system for those in Philadelphia only: since this act does so, it is invalid for lack of uniformity.

It appears to me that the Constitution does make the very distinction that relators say it doesn't. Article V, sec. 12, reads as follows:

"In Philadelphia there shall be established, for each thirty thousand inhabitants, one court, not of record, of police and civil causes, with jurisdiction not exceeding one hundred dollars; such courts shall be held by magistrates whose term of office shall be six years, and they shall be elected on general ticket at the municipal election, by the qualified voters at large; and in the election of the said magistrates no voter shall vote for more than two-thirds of the number of persons to be elected when more than one are to be chosen; they shall be compensated only by fixed salaries, to be paid by said county; and shall exercise such jurisdiction, civil and criminal, except as herein provided, as is now exercised by aldermen, subject to such changes, not involving an increase of civil jurisdiction or conferring political duties, as may be made by law. In Philadelphia the office of alderman is abolished."

This section mentions not only "police and civil causes", but "such jurisdiction, civil and criminal, as is now exercised by aldermen, subject to such changes as may be made by law". These clauses were not self-executing, and legislative action was needed to estab-

lish the new magistrates' courts: Rutenberg et al. v. Philadelphia et al., supra; In Re Cahill, 110 Pa. 167 (1885). This was done by the Act of February 5, 1875, P. L. 56, and courts were set up with alderman's jurisdiction in "police and civil causes". If the present act calls for new and onerous duties, as relators contend, the Act of 1875 and its predecessor of 1867, cited below, made greater ones, for they abolished the old fee system and substituted a salary, with the duty to account for costs, fees and fines, compelled the magistrates to finance their own courtrooms, supplies and help, and specified the books they were to keep.

Relators point to the Acts of March 29, 1851, P. L. 272, 42 PS §1077, and of March 13, 1867, P. L. 420, 17 PS §481, which give aldermen and justices of the peace the same jurisdiction and prescribe what their dockets and transcripts must contain. The Constitution, in giving magistrates the same jurisdiction as aldermen, must certainly have contemplated the jurisdiction as it then was, including the special provisions for Philadelphia magistrates: Georges Township School Directors, 286 Pa. 129 (1926). The constitutional provision against special legislation is prospective only: Evans v. Phillipi, 117 Pa. 226 (1887).

It is clear to me that the Constitution allows special legislation for Philadelphia magistrates, and with good reason, considering the special conditions in a large city. In Gottschall v. Campbell, 234 Pa. 347 (1912), which upheld the Allegheny County Court as not violative of the special law and uniformity sections of the Constitution, it is interesting to note that the court cites section 12 as an example of valid separate classification, in these words:

"Again, in section 12 it is provided that in Philadelphia there shall be established for each 30,000 inhabitants, one court, not of record, of police and

civil causes, with jurisdiction not exceeding one hundred dollars; such courts to be held by magistrates whose term of office shall be five years; and the office of alderman is abolished. *No such court is provided for Allegheny County, or for any of the other counties.*" (Italics supplied.)

The Supreme Court, for similar reasons, upheld the Municipal Court of Philadelphia in Gerlach v. Moore, 243 Pa. 603 (1914), and in Philadelphia and Reading Co. v. Walton, 248 Pa. 381 (1915). In the former case, the concurring opinion, referring to the Allegheny County Court case, says:

". . . thus holding that the judges of the Common Pleas could in this manner be absolutely deprived of powers and jurisdiction, and that the jurisdiction of the Quarter Sessions of that county could be made to differ from that of all other courts of the same grade in the State, notwithstanding Section 26, of Article V, of the Constitution."

Relators next complain on the ground that the act denies equal protection of the laws. The argument for this position is of necessity obscure. It appears to be that a defendant could not, for example, get a continuance of his case in order to secure counsel without giving his reason under oath, and that even this would not be of much help if the magistrate didn't happen to have his docket handy.

This sort of argument is helpful only when seeking an extra peg on which to hang a finding of unconstitutionality, but as I am not doing so, it makes little sense. I shall discuss in a moment the reasonableness of the provisions under attack, and need only observe that relators are not affected by what might affect the litigants before them. Hence their present argument is not apposite: Northwestern Pennsylvania Association v. Meadville, 359 Pa. 549 (1948).

The next contention is that the act is an improper exercise of judicial power by the legislature. The point of the argument is that the act seeks to control a magistrate's discretion in granting continuances by making difficult regulations about recording them. It is conceded that the legislature may alter the criminal jurisdiction of the magistrates' courts. It is also conceded, on the other hand, that the power to grant continuances is a matter of judicial discretion.

What all this has to do with the instant case is hard to see. The act says nothing about why or whether a continuance should be granted or refused. It only says that it shall not be granted unless the reason is sworn to and noted in the magistrate's docket, together with the name of the party requesting it, and the whole returned as part of the transcript. There is no provision covering the refusal of a continuance.

The purpose of section 14 is set forth in Rutenberg v. Philadelphia, supra (329 Pa. 26), at page 34:

"Section 14 is designed to combat the practice of some magistrates of continuing the hearing of criminal cases indefinitely and without valid reason. By the practice of holding persons 'for further hearing' opportunities are afforded for 'the fixing' of cases between hearings, for the practice of extortion by police officers and others, and for the operation of sinister political influences. In many instances further hearings are necessary. The absence of material witnesses, the necessity for further investigation in a particular case, and other good reasons often justify and even require the holding of further hearings, and the right should not be abolished."

This purpose is outlined a good deal more vehemently in the report of the commission of citizens—one of whom I appear to have been—who drew the suggested act.

There is nothing in section 14 that seems to me unusual. If magistrates can be made, as they have been since 1867, to keep dockets and day books in which to record the daily proceedings, including the names and residence of the parties, the charge, all fees, fines, costs, and penalties collected, and to make up and return a transcript, it seems a little thing to require what section 14 does in addition. It has been asserted that the extra requirements are inconvenient because a magistrate may not have his docket with him when he sits in a court other than his own, and that if there is a further hearing, another magistrate may preside.

Such inconveniences may indeed exist, but they are hardly fodder for constitutional argument. Section 6 of the act provides that the board of magistrates shall prescribe forms for its dockets, and that the dockets shall be open to public inspection. The city, under section 35, shall provide dockets, blanks, books, legal blanks, stationery, and stenographic service and equipment. With these facilities and some careful thought, the mechanical difficulties could be surmounted.

Even the Supreme Court must file reasoned opinions, by the Act of May 11, 1871, P. L. 266, and rather a nuisance it must be too, in many cases: to say nothing of the multitudinous records that we more elementary laborers in the judicial vineyard are made responsible for.

I regard section 14 as requiring reasonable ministerial acts that have nothing to do with judicial discretion or the restriction thereof.

The last point raised by relators is the only one that has substance. It is that since sections 14 and 43(b) do not require mens rea, they are defective, for penalizing with fine, imprisonment, and removal from office an act that is malum prohibitum and not malum in se.

There are several acts that require ministerial and procedural duties of magistrates and justices of the peace, and prescribe penalties in case of failure to perform them. For example:

The Act of August 22, 1752, 1 Sm. L. 218, sec. 1, 42 PS §541, makes detailed requirements as to procedures to be followed by a justice of the peace before writs may be granted and provides for a cash forfeiture for every such offense by the justice of the peace granting the writ otherwise than according to the statute.

The Act of March 20, 1810, P. L. 208, 5 Sm. L. 161, 42 PS §761, requires the justice to deliver a duly certified copy of his proceedings to the party requesting the same and his refusal to do so is made a misdemeanor in office.

The Act of March 22, 1877, P. L. 13, sec. 1, 42 PS §670, requires justices and aldermen to render judgment in any cause within 10 days after hearing the evidence, and section 2 of the act makes mere failure to comply a misdemeanor punishable by fine.

The extensive provisions of The Vehicle Code of May 1, 1929, P. L. 905, art. X, as amended, forbid the magistrates to impose costs where a defendant is found not guilty in a prosecution under the act (75 PS §734), or to impose any fine, even a lesser one, than is provided in the code (75 PS §734.1), and requires a magistrate to make and preserve, for three years, an exact record of the proceedings (75 PS §735a), to deliver a detailed receipt for fines (75 PS §735b), the keeping for two years of a full report of every case in which a person is charged with a violation, make a monthly report of the disposition of every case (75 PS §736), and requires a sworn statement of all fines and penalties collected and bail forfeited (75 PS §737). Each of these sections prescribing duties has a penalty clause which reads as follows:

"Penalty—Any magistrate violating any of the provisions of this section, shall be deemed guilty of a misdemeanor in office, and, upon conviction thereof in a court of quarter sessions, shall be sentenced to pay a fine of five hundred ($500) dollars and costs of prosecution, or undergo imprisonment for not more than sixty (60) days, or suffer both such fine and imprisonment."

One can open The Penal Code almost at will and find acts that make certain conduct criminal without intent. The general rule is well stated in 16 C. J. 76 and 77 as follows:

"(Sec. 42) b. Acts Prohibited by Statute. As a general rule, where an act is prohibited and made punishable by statute only, the statute is to be construed in the light of the common law and the existence of a criminal intent is to be regarded as essential, even when not in terms required. The legislature, however, may forbid the doing of an act and make its commission criminal without regard to the intent or knowledge of the doer, and if such legislative intention appears the courts must give it effect, although the intent of the doer may have been innocent. This rule has been generally, although not quite universally, applied in the enforcement of statutes passed in aid of the police power of the state, where the word 'knowingly' or other apt words are not employed to indicate that knowledge is an essential element of the crime charged. The doing of the inhibited act constitutes the crime, and the moral turpitude or purity of the motive by which it was prompted, and knowledge or ignorance of its criminal character, are immaterial circumstances on the question of guilt. Whether or not in a given case a statute is to be so construed is to be determined by the court by considering the subject matter of the prohibition as well as the language of the statute, and thus ascertaining the intention of the legislature."

There are many cases in this State that illustrate this principle, among them: In Re Carlson's License, 127 Pa. 330 (1889) ; Commonwealth v. Zelt, 138 Pa. 615 (1890) ; Commonwealth v. Weiss, 139 Pa. 247 (1890) ; Commonwealth v. Hackney, 117 Pa. Superior Ct. 519 (1935) ; Commonwealth v. Jackson, 146 Pa. Superior Ct. 328 (1941) ; Commonwealth v. Stofchek, 322 Pa. 513 (1936).

The real question before me is whether section 14 is a valid exercise of the police power, and I have little doubt that it is. Not only may food and health be so regulated, but a host of other subjects, such as animals, canals, elections, bridges, lotteries, billboards, brokers, mercantile businesses, automobiles, hotels, peddlers, and many more. An excellent expression of the police power appears in Commonwealth v. Jackson, supra, where the opinion quotes Chief Justice Cooley in People v. Roby, 18 N. W. (Mich.) 365:

" 'Many statutes which are in the nature of police regulations, as this is, impose criminal penalties, irrespective of any intent to violate them; the purpose being to require a degree of diligence for the protection of the public which shall render violation impossible.' "

The need for the present legislation is set forth in Rutenberg v. Philadelphia, supra (329 Pa. 26 (1938) ), and near the end of the opinion the following appears:

"We have said that where an act is the product of the study made by a commission of citizens appointed to investigate conditions found to be harmful, and authorized to draft an act to eradicate such evils, the act should not be condemned unless the breach of the fundamental law is so glaring that there is no escape: Minsinger v. Rau, 236 Pa. 327."

It takes no stretch of imagination to regard section 14 as a valid exercise of police power. The need has been shown, and its background is the continuing need

of the public for honest efficiency at the judicial grass-roots. With magistrates paid a modest salary, not required to be learned in the law, and open to the most exacting human and political pressure, public interest in the precision and honesty of their work is clear.

Relators cite Commonwealth v. Hubbs, 137 Pa. Superior Ct. 244 (1939), which contains language indicating that a charge at least of wilfulness is necessary to support an indictment for failure to perform a ministerial duty. That case, however, involved common-law indictments and was not based on a police statute. The same is true of Commonwealth v. Rosser, 102 Pa. Superior Ct. 78 (1930); Commonwealth v. Brown, 116 Pa. Superior Ct. 1 (1934); Commonwealth v. Brownmiller, 141 Pa. Superior Ct. 107 (1940), and Commonwealth v. Fahey, 156 Pa. Superior Ct. 254 (1944).

Relators face indictment under a statute exercising the police power and making the forbidden action unlawful and a misdemeanor, with penalties attached. They are not charged with failure to perform a statutory duty that is not made criminal and for which no penalty is provided, as in the Rosser case. The breach of such a duty is not of itself criminal, but if the duty is in the public interest, a further showing of wilfulness or corruption is necessary to make out a common-law offense. In the instant case, however, the violation is expressly made criminal, and since it is an exercise of the police power, the intent is immaterial.

In the school director cases, of which Chester School District's Audit, 301 Pa. 203 (1930), is a sample, directors may be punished for failure to perform positive statutory duties, regardless of intent. Section 14 is certainly positive, despite the apparently negative language: "No continuance shall be granted unless, etc." The essence of the direction to do what is pro-

vided before granting a continuance is positive. And in view of the abuses to be corrected, I regard section 14 as mandatory rather than directory only.

Common-law wilfulness or corruption are therefore not required averments in a charge of violating section 14. Section 43(b) makes noncompliance with section 14 unlawful, and section 44 makes any violation of the act a misdemeanor. The common law does not apply when there is a criminal statute: Commonwealth v. Peoples, 345 Pa. 576 (1942).

In Wilson v. Commonwealth, 10 S. & R. 373 (1823), a justice of the peace refused to deliver on demand a copy of certain proceedings before him, as required by the Act of March 20, 1810, P. L. 208, sec. 23, 42 PS §761. Failure to do so was made a misdemeanor in office. The justice argued that it was not an indictable offense but ground for impeachment only. The court, by Duncan, J., said:

"The answer to this is a short one. It was made the duty of the officer to deliver a copy of his proceedings on demand by either party. It was a public duty, and the refusal a public offense, and indictable."

See also Commonwealth v. Evans, 13 S. & R. 425 (1825).

Whether this is also true of removal from office is not now before me. The solution of that problem at this stage would be premature, since the provisions of the act are severable and the undeniably constitutional punishments of fine and imprisonment are provided for as well as removal from office. Relators now face indictability, not punishment in any of its three forms. The constitutionality of the removal provision can be raised if and when relators are faced by it.

The informations here set forth the offense with sufficient particularity. They refer to the specific provision of the act and charge malfeasance, misconduct, and misdemeanor in office. An information need not

be drawn with the particularity of an indictment. It is enough that the essential elements of the offense be set forth in common parlance so that the accused knows what charge it is he has to face. Even if allegation and proof of interest were required, it need not appear in the information: Commonwealth v. Carson, 166 Pa. 179 (1895); Commonwealth v. Ashe, 344 Pa. 407 (1942); Commonwealth v. Campbell, 22 Pa. Superior Ct. 98 (1903); Commonwealth v. Miller & Burke, 77 Pa. Superior Ct. 469 (1921); Commonwealth v. Grego, 116 Pa. Superior Ct. 295 (1935).

The proof before me admittedly does not disclose a criminal intent or wilfulness, but merely noncompliance with section 14. For the reasons given above, I regard the lack of such intent or wilfulness as immaterial.

Since in my opinion sections 14 and 43(*b*) of the act are constitutional and the informations set forth an indictable offense, the writ must be, and is, denied.